**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**CONSOLIDATED FOODS CORPORA-
TION, a corporation,**
Defendant.

No. 74 Civ. 3094.

United States District Court,
S. D. New York,
Civil Division.

Dec. 16, 1974.

Joseph J. Gercke, Asst. Director for Compliance, Bureau of Competition, Federal Trade Commission, Washington, D. C., by Salvatore F. Sangiorgi, and R. Baylor Rowe, Attys., Federal Trade Commission, New York City, of counsel, for plaintiff.

J. Wallace Adair, Ray S. Bolze, Howrey, Simon, Baker & Murchison, Washington, D. C., George H. Colin, Baer & Marks, New York City, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In this action, brought pursuant to Sections 5($l$), 5(m) and 16(b) of the Federal Trade Commission Act, as amended, 15 U.S.C. §§ 45($l$), 45(m) and 56(b), and Section 11($l$) of the Clayton Act, as amended, 15 U.S.C. § 21($l$), the Federal Trade Commission is seeking civil penalties and equitable relief for Consolidated Foods Corporation's alleged failure to obey a final Commission Consent Order to cease and desist from discriminating in the pricing of its decorative fabric trimming and trimming accessories products. The case is now before us on plaintiff's motion for summary judgment on liability alone, Fed.R. Civ.Proc. 56, and defendant's cross motion to dismiss the complaint, Fed.R. Civ.Proc. 12(b). These motions raise the following questions:

(1) Where the Commission has in fact taken all procedural steps necessary to establish its right to bring a civil penalty action, does its failure to enumerate such steps in the complaint deprive this court of subject matter jurisdiction?

(2) Is a consent order rendered null and void by the fact that it contains a paragraph, not contained in the prior Consent Agreement, which requires the respondent to file a compliance report?

(3) In a civil penalty action under the antitrust laws, is it mandatory that the Federal Trade Commis-

sion give formal notice to the defendant [1] that it is in violation of its order prior to instituting the action?

(4) Assuming the validity of the consent order entered into between the parties, under what circumstances are the statutory defenses of cost justification and meeting competition available to defendant?

This action is one of the first to be brought by the Commission under its new statutory authority [2] to sue in its own right. Moreover correspondence in the record between the Commission and the Attorney General indicates that the action was brought as a "test case" to define such new authority. A more extensive opinion than might otherwise be required therefore seems appropriate.

The action dates back to the Federal Trade Commission proceeding In the Matter of Consolidated Foods Corporation, FTC Docket No. C–2454. On or before January 26, 1972, the Commission notified defendant of the commencement of an investigation to determine whether Consolidated's Conso Products Company Division had discriminated in price between its competing direct-buying retail purchasers in the distribution and sale of Conso's drapery trimmings products, in violation of section 2(a) of the Clayton Act, as amended, 15 U.S.C. § 13(a). Subsequently, at defendant's request, Commission staff counsel conferred with defendant's counsel to discuss a draft administrative complaint and the possibility of terminating the proceeding by consent order. These negotiations-resulted in a consent agreement, executed on June 1, 1973, in which the parties stipulated that the Commission would issue, without findings, an order requiring defendant to abandon the discriminatory pricing practices which were the focus of the Commission's investigation.

The agreement contained various important provisions, among which was, in paragraph three, a waiver by defendant of:

"(a) Any further procedural steps;

(b) The requirement that the Commission's decision contain a statement of findings of fact and conclusions of law; and

(c) All rights to seek judicial review or otherwise to challenge or contest the validity of the order entered pursuant to this agreement."

In paragraph six, the agreement provided that, following entry of the order by the Commission,

" . . . the order to cease and desist shall have the same force and effect and shall become final and may be altered, modified, or set aside in the manner and within the same time provided by statute for other orders. The complaint may be used in construing the terms of the order."

---

1. Although the "defendant" here was "respondent" before the Commission, it will in the interest of clarity hereinafter be referred to as "defendant" regardless of the context.

2. 15 U.S.C. § 45(m): "Whenever in any civil proceedings involving this Act the Commission is authorized or required to appear in a court of the United States, or to be represented therein by the Attorney General of the United States, the Commission may elect to appear in its own name by any of its attorneys designated by it for such purpose, after formally notifying and consulting with and giving the Attorney General 10 days to take the action proposed by the Commission."

15 U.S.C. § 56: "Whenever the Federal Trade Commission has reason to believe that any person, partnership, or corporation is liable to a penalty under section 14 or under subsection (*l*) of section 5 of this act, it shall—

(a) certify the facts to the Attorney General, whose duty it shall be to cause appropriate proceedings to be brought for the enforcement of the provisions of such section or subsection; or

(b) after compliance with the requirements of Section 5(m), itself cause such appropriate proceedings to be brought."

Finally, in paragraph 8 of the agreement, the parties recognized defendant's duty to file compliance reports:

"Officers of proposed respondent have read the proposed complaint and order contemplated hereby, and they understand that once the order has been issued, they will be required to file one or more compliance reports showing that they have fully complied with the order, and that they may be liable for a civil penalty of up to $5,000 for each violation of the order after it becomes final."

The consent agreement with proposed order and the administrative complaint were placed on the public record for thirty days, until August 25, 1973, as required by the agreement. On September 12, 1973, the Commission formally issued its complaint and decision and order to cease and desist, which were subsequently served on defendant on September 26, 1973. Defendant was directed thereafter to cease and desist from

"Discriminating, directly or indirectly, in the price of [decorative fabric trimmings and trimming accessories] products of like grade and quality by selling to any purchaser at net prices higher than the net prices charged to any other purchaser competing in fact in the resale or distribution of such products."

The order contained one additional paragraph, not included in the prior consent agreement, which required the defendant to file a compliance report within sixty days of service of the order.

By letter dated October 24, 1973, the Commission's compliance staff suggested an outline for defendant's first compliance report, due November 26, 1973. Defendant responded to this letter on October 30, 1973, by requesting a 30-day extension of time within which to submit its first compliance report. The Commission, by letter of November 6, granted defendant the 30-day extension, but asserted that such extension did not suspend or relieve defendant from its obligation to comply with the substantive portions of the order by November 26, the day on which it became final under §§ 11(c) and 11(g) of the Clayton Act as amended, 15 U.S.C. §§ 21(c) and 21(g). On December 20, defendant requested another extension of time for filing its compliance report, whch was immediately granted by the Commission.

Defendant finally submitted its compliance report on January 3, 1974. The Commission, by letter dated January 17, 1974, requested an explanation as to why defendant had not discontinued use of its prior pricing and discount plan. Defendant replied in a supplemental report dated January 23, 1974 that its discount structure had not been discontinued because of its poor financial condition, the necessity of meeting competition, and the difficulty it had encountered in implementing a new and prospective computerized cost-justified pricing system.

On February 14, the Commission notified defendant of its failure "to clearly and unequivocally disclose or represent that (it) had discontinued use of the pricing program, or significant elements thereof as utilized by Consolidated before the date of finality of the order in question." The Commission again reminded defendant that Section 3.61(d) of the Federal Trade Commission's Rules of Practice provides that a respondent " . . . must in any event, be in full compliance on and after the date the order becomes final . . ." The Commission then explicitly rejected the compliance report, found the proposed cost justification program inconsistent with the consent order, and reserved and reaffirmed "its right to seek civil penalties or otherwise enforce the provisions of this order for any past, present or continuing violation thereof."

Thereafter, having duly notified the Attorney General, the Commission instituted this suit for civil penalties, alleging that defendant's failure to discontinue its pricing system discount structure violated the consent order. The Commission seeks penalties from the date

the order became final, November 26, 1973, to at least March 1, 1974, when the defendant informed the Commission that it had implemented a new discount schedule. In its motion for summary judgment, it claims that there is no material issue of fact since, as the Commission asserts, defendant has admitted in its compliance report of January 3, 1974 to the continuation of its prohibited pricing system.

Defendant urges three grounds in support of its motion to dismiss:

(1) The Court lacks subject matter jurisdiction since the Commission did not allege facts in its complaint sufficient to show compliance with the specific procedural steps outlined in 15 U.S.C. § 45(m)(1973);

(2) The complaint fails to state a claim upon which relief can be granted because the Consent Order as issued was not, in fact, consented to and is therefore null and void; and

(3) The complaint fails to state a claim upon which relief can be granted because the Commission failed to notify defendant that it was in default of the consent order, prior to instituting this action.

### *Jurisdiction*

■ The crux of defendant's argument for dismissal for lack of jurisdiction is that although the complaint asserts the statutory authority under which the present action was brought, it fails to enumerate the procedural steps the Commission followed pursuant to these statutes. The Commission was given this authority so as to ensure prompt enforcement of the laws within its jurisdiction. Under the statute, the Commission may itself sue to directly enforce its orders, "after formally notifying and consulting with and giving the Attorney General 10 days to take the action proposed by the Commission".

P.L. 93–153, 93rd Cong., 1st Sess., (1973), Cong. & Admin.News, 1973, p. 657.

The affidavit of Ronald B. Rowe, attorney for the Federal Trade Commission, establishes that the Commission properly followed the statutorily required procedural steps. Defendant concedes this. Nevertheless, the complaint does not enumerate the facts evidencing compliance with these procedural requirements. Defendant cites United States v. St. Regis Paper Company (2d Cir. 1966) 355 F.2d 688, as authority for its contention that a failure to plead jurisdictional facts deprives the court of jurisdiction. The *St. Regis* case is clearly distinguishable. There, the Commission had not, as required by 15 U.S.C. § 56, certified the case to the Attorney General. Since the Commission had failed to follow the statutory mandate, which the court concluded was jurisdictional, the Attorney General had no authority to institute suit. The case did not, as does ours, involve any question of the sufficiency of the pleadings.

The present liberal rules of pleading embodied in Rule 8 of the Federal Rules of Civil Procedure, were promulgated to provide flexibility and to serve as "a means to accomplish the end of a just judgment." Maty v. Grasselli Chemical Co. (1938) 303 U.S. 197, 200–201, 58 S. Ct. 507, 509, 82 L.Ed. 745. They are intended to provide a minimum standard according to which plaintiff must give defendant fair notice of plaintiff's claim. Conley v. Gibson (1957) 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80. Rule 8 requires only that a pleading contain "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . [and] of the claim showing that the pleader is entitled to relief." These minimal requirements have been characterized as "notice" pleading. 2A Moore's Federal Practice ¶ 8.03. Under notice pleading, courts have consistently held that it is no longer necessary to state "facts" as long as fair notice of the claim is given

to the opposing party. Nagler v. Admiral Corp. (2d Cir. 1957) 248 F.2d 319; Oil, Chemical & Atomic Workers International Union v. Delta Refining Co. (6th Cir. 1960) 277 F.2d 694; Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, Inc. (8th Cir. 1942) 131 F.2d 419. This liberal reading of the notice requirement has largely resulted from the expensive pre-trial devices for discovery. 2A Moore's Federal Practice ¶ 8.13.

 The complaint clearly meets the liberal standards of notice pleading, since it states the statutory authority under which the present action is brought. Furthermore, the pleading of jurisdiction in this manner conforms with the form recognized as correct when the federal government or one of its agencies is suing. 2A Moore's Federal Practice ¶ 8.07 [2], n.2. Defendant's motion to dismiss on the ground of insufficient jurisdictional pleading must, accordingly, be denied.[3]

### Validity of the Consent Order

 Defendant asserts that the complaint fails to state a claim upon which relief can be granted since the consent order upon which the suit is based is not the same as the proposed order agreed to by defendant. Specifically, it contains an additional paragraph, not contained in the consent agreement, requiring the submission of a compliance report within sixty days of service of the order. For the reasons set forth below,

defendant's motion to dismiss on this ground must also be denied.

Defendant relies primarily upon Swift & Co. v. United States (1928) 276 U.S. 311, 323–324, 48 S.Ct. 311, 72 L.Ed. 587 and United States v. Armour & Co. (1971) 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256, as authority for the proposition that a consent decree or order issued by a federal agency is a nullity and will be set aside if it was entered into without actual consent to each and every element therein. That is a valid general principle. However, it was not here violated, and, if it had been, defendant would not now have standing to complain of the violation.

In the first place, the supposedly offending paragraph added nothing to the obligations to which defendant had agreed in the negotiations leading up to the consent order. If the order had been wholly silent on the question of reporting, the defendant would nevertheless have been obligated to file a compliance report within sixty days under § 3.-61 of the Commission's Rules and Regulations.[4] Moreover, the original consent agreement specifically mentioned the pertinent provisions of the Rules and called defendant's attention to the penalties that would flow from any failure to comply.

In the second place, if defendant believed the consent order invalid because of any variance from the consent agreement, its remedy was not to disobey the order, but—within the statutory 60 days

---

3. Even if defendant's argument were valid, the remedy of dismissal would be too drastic, since one of the motivating forces behind the Federal Rules was to prevent dismissal for technical defects. Wright and Miller, Federal Practice and Civil Procedure, § 1343. Dismissal is especially inappropriate in light of the provision in 28 U.S.C. § 1653 allowing amendment of technical jurisdictional defects at the trial or appellate level. Moreover, at oral argument, the Commission submitted—and the court accepted—an amended complaint in compliance with defendant's request, which specifically enumerates the procedural steps taken prior to instituting the present action.

4. "(a) In every proceeding in which the Commission has issued an order, pursuant to the provisions of section 5 of the Federal Trade Commission Act, or section 11 of the Clayton Act, as amended, and except as otherwise specifically provided in any such order, each respondent named in such order shall file with the Commission, within sixty (60) days after service thereof, or within such other time as may be provided by the order or the rules in this chapter, a report in writing . . . setting forth in detail the manner and form of his compliance . . . ."

—to seek re-examination of the order by the Commission[5] and if there unsuccessful, petition for review to an appropriate Court of Appeals.[6] Defendant took no such action. Instead, nearly one month before the order became final, it requested an extension of time in which to file its compliance report, thereby in essence acknowledging the validity of the order's compliance provision.

### Notice

■ The defendant urges as a final ground for dismissal of the complaint that the Commission, prior to instituting the present action, failed to give it formal notice that it was in violation of the order. The sole basis for the defendant's assertion that such formal notice is required prior to suit is dictum contained in Continental Baking Co. v. Dixon (D.Del.1968) 283 F.Supp. 285. The court there stated (at 287–288):

". . . the Commission has the obligation to determine and to inform parties whether and to what extent their conduct may be in violation of a cease and desist order. It is only after the Commission has made such a finding that the penalties contemplated by 15 U.S.C. § 45($l$) could be assessed . . . ."

In no civil penalty suit since Continental in which the "notice" issue was raised has it been accepted as a valid defense. In fact, in every such instance it has been flatly rejected. See, for example, United States v. J. B. Williams Company, Inc. (2d Cir. 1974) 498 F.2d 414, 434–435, United States v. Beatrice Foods Co. (8th Cir. 1974) 493 F.2d 1259–1266, cert. pending on other grounds, United States v. Swingline, Inc. (E.D.N.Y.1974) 371 F.Supp. 37, 45. The respective courts in each of these cases considered

in detail the legislative history of the penalty provisions and unanimously concluded that, especially in light of the manifest purpose behind these provisions to "streamline enforcement proceedings under the Clayton Act," United States v. Beatrice Foods Co., supra, 493 F.2d at 1266, "such notice is neither required by the statutory scheme nor by the Commission's rules and procedures." Id., at 1265 (quoting United States v. J. B. Williams Co., Inc., 354 F.Supp. 521, 532). This is in accord with the public statement by the Commission that "the obligation of firms to comply arises, and liability for penalties may be incurred, on the effective date of the orders." 33 F.R. 19097 (1968).

■ Even assuming, arguendo, the validity of defendant's contention, a review of the facts of this case discloses that sufficient notice was given by the Commission of its intention to hold the defendant in contempt of the order. In a letter dated February 14, 1974, the Commission informed defendant that,

"We reject your report of compliance because you have failed to establish that you discontinued the pricing practices proscribed by the order . . .

. . . The Commission expressly reserves its right to seek civil penalties or otherwise enforce the provisions of this order for any past, present or continuing violation thereof."

This letter, written nearly three months after the order became final and after the Commission had already rejected two purported compliance reports, would seem to fulfill even the extraordinary[7] notice requirements outlined in Continental Baking Co., supra.

---

5. 15 U.S.C. §§ 21(b) and 45(b).

6. 15 U.S.C. §§ 21(c) and 45(c).

7. Judge Tyler of this District has characterized the dictum in Continental here relied upon by the defendant as an "apparent

misconception of the entire statutory framework", adding, "I can only assume that [the judge in Continental] was thinking of something different when he wrote that sentence . . . ." United States v. Ancorp National Services, Inc. (S.D.N.Y.1971) (unreported).

Since the argument concerning notice has no basis in law or fact, the defendant's motion to dismiss on that ground must be denied.

### Liability

■ Having concluded that a valid and binding consent order was issued, it now becomes necessary, on plaintiff's motion for partial summary judgment, to determine whether the record conclusively establishes that the defendant violated such order. The Commission contends that defendant's conceded failure —until March 1, 1974—to discontinue the discount pricing system which had triggered its original investigation violated the order. Civil penalties are sought from November 26, 1973—the date the order became final—to "at least" March 1, 1974—the date the defendant finally implemented a new discount schedule.

The order, insofar as here relevant, directed the defendant to cease and desist from

"Discriminating, directly or indirectly, in the price of [its] products of like grade and quality by selling to any purchaser at net prices higher than the net prices charged to any other purchaser competing in fact in the resale or distribution of such products."

In response to the Commission's charge of non-compliance, the defendant asserts that all of its sales subject to the order on or after November 26, 1973 have been at a uniform price to all competing purchasers "except where it was necessary to lower a price in order to meet competition".[8] (Defendant's memorandum, p. 4). The essence of defendant's position is that the continuation of its price discounts to certain customers was justified by the statutory defense of meeting competition.[9] In support of its contention, defendant has sub-mitted several affidavits which purport to describe in detail the competitive situation with which it was faced after November 26, 1973.

Defendant cites Federal Trade Comission v. Ruberoid Co. (1952) 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081 for the proposition that although the instant order does not specifically refer to this statutory defense, such a defense is nonetheless implicit in its terms and is as viable as if set forth in full. There can be no doubt that *Ruberoid* conclusively establishes such a proposition. However that is not the end—but rather the beginning—of our inquiry.

Whether a defense of meeting competition is available in a given situation is a mixed question of law and fact. In this particular case the availability of that defense in the situation confronting the defendant up to and including November 26, 1973—the date of the order —could have been litigated before the Commission—subject to review by a Court of Appeals. However the defendant elected not to litigate, but to consent to an order which conclusively established that no such defense was then available. Our sole concern, therefore, is whether the affidavits before us arguably support a contention that there has been a change of circumstances since November 26, 1973, which would give rise to a defense which did not exist before then. In *Ruberoid,* the Court observed (at 476, 72 S.Ct. at 805):

"If questions of justification, claimed upon the basis of facts relating to costs or meeting competition, have once been finally decided against the seller, it cannot again interpose the same defense *upon substantially similar facts* when the Commission seeks to show that its order has been violated." (italics supplied)

and further (at 477, 72 S.Ct. at 805):

8. The defendant's memorandum also speaks of the defense of "cost justification". However, nothing in defendant's affidavits addressed itself to that defense, so it will not again be mentioned in this opinion.

9. 15 U.S.C. § 13(b).

"The same result follows where the evidence supporting the defense, although not produced in the previous proceedings, was then available to the seller. In short the seller, in contesting enforcement or contempt proceedings, may plead only those facts constituting statutory justification which it has not had a previous opportunity to present."

For the reasons that follow, we conclude that the affidavits before us do not suggest the existence of a new post-order defense—but rather rely wholly upon evidence which was "available" to the defendant at the time it consented to the order, and that accordingly the requirements set forth in the quoted portions of the *Ruberoid* opinion have not been met.

To begin with, the defendant's initial compliance report, dated January 3, 1974, contains the explicit—and highly damaging—admission that while the statutory defenses were available to it during the negotiations preceding the consent order, it failed to assert them because to do so would have been too costly:

"Although respondent contends that any such deviations [from its published list prices] were fully justified under subsections 2(a) and (b) of the amended Clayton Act, *to avoid lengthy and burdensome litigation,* respondent *elected* in 1973 to enter into an Agreement containing a Consent Order to Cease and Desist with the Commission . . ." (Exhibit L to plaintiff's motion for summary judgment, at p. 7) (emphasis supplied).

Moreover, in its January 23, 1974 compliance report to the Commission—attached to plaintiff's motion for summary judgment as Exhibit N—the defendant specifically stated:

". . . if we had not *continued* the discount to customers who had been afforded a discount price over the past several months, they would have switched to competition . . .

Under the circumstances, Conso Products had no alternative but to *continue to rely* upon its meeting competition defenses" (Exhibit N, at p. 2) (emphasis supplied).

This very language was repeated verbatim in the affidavit submitted by David E. Tittle, the President of Conso Products Division of Consolidated Foods Corporation, as evidence to support his conclusion that had the defendant switched to a uniformly low pricing system as required by the order it would have incurred "substantial loss[es]." Tittle Affidavit, ¶ 17.

■ The defendant's affidavits continually advert to the circumstance that competitive conditions before the order were substantially similar to those existing thereafter. The phrase "vigorous price competition" is used repeatedly to characterize the competitive situation both before and after November 26, 1973—the date the order became final. For example, paragraph 3 of the Tittle Affidavit reads, insofar as here relevant:

"Conso is engaged in the manufacture and sale of decorative fabric trimmings and trimming accessories. *In the period both prior to November 26, 1973 and subsequent thereto* up to the present, Conso has experienced vigorous price competition from other manufacturers and sellers of these product lines." (italics supplied)

See also paragraph 2 of Robert B. Schwartz Affidavit. Indeed, the only change in the above-described competitive situation to which these affidavits refer is the entry of the consent order itself. According to the deponents,

"Competition in the manufacture and sale of decorative and fashion trimmings and accessories has accelerated rapidly since November 1973 when competitors became aware of *the Federal Trade Commission Order* against Conso. This *has caused increasing demands from customers that Conso meet new competitive prices* or lose sales and the situation cited above of

our need to meet competition since November 26, 1973 or lose sales is a *direct outgrowth* of this new competitive situation since November 1973." (italics supplied) Tittle Affid., ¶ 13. See also Schwartz Affid., ¶ 12.

This contention presents the question whether the Supreme Court, in speaking of "a new competitive situation involving different circumstances", intended to include the entry of a cease and desist order itself as such a "new" and "different" circumstance. Such a conclusion would by hypothesis render a nullity every FTC order whether obtained upon consent or after extensive litigation. We cannot, therefore, attribute such a meaning to the Court's opinion.

■ Legal arguments aside, the emotional thrust of the defendant's papers is that it would be impossible for it to do profitable business under the terms of the order. Conceding that it could keep those customers who were already receiving discounts by uniformly reducing its prices to all its customers, defendant urges that such a course would be financially ruinous. However, those are precisely the contentions that the defendant should have urged before the Commission—either in argument to its staff or in formal litigation—before permitting any order to have been entered. Defendant, having neglected to urge such considerations when it had an opportunity to do so, and having consented to the entry of this particular order, may not now rely upon them as grounds for defying that order. Financial difficulty, even where "ruinous", is not a defense to an FTC penalty action, but is relevant, if at all, to the assessment of penalties. United States v. Beatrice Foods Co. (D.Minn.1972) 344 F.Supp. 104, 116, aff'd (8th Cir. 1974) 493 F.2d 1259, cert. pending, 43 U.S.L.W. 3008.

We are left, therefore, with the inescapable factual conclusion that defendant failed to discontinue the discriminatory pricing practices proscribed by the order. Having determined that it failed to suggest a genuine issue of fact with

respect to the claimed statutory defense, we find the defendant to have been in violation of the order between November 26, 1973 and March 1, 1974. Plaintiff's motion for partial summary judgment is, accordingly, granted.

So ordered.