**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

v.

**CONSOLIDATED FOODS CORPORA-**
**TION, a corporation, Defendant.**

**No. 74 Civ. 3094.**

United States District Court,
S. D. New York.

May 21, 1975.

1354

Joseph J. Gercke, Asst. Director for Compliance, Bureau of Competition, Federal Trade Commission, Washington, D. C. by Salvatore F. Sangiorgi, New York City, R. Baylor Rowe, Washington, D. C., of counsel, for plaintiff.

J. Wallace Adair, Ray S. Bolze, Howrey, Simon, Baker & Murchison, Washington, D. C., George H. Colin, Baer & Marks, New York City, for defendant.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

On December 16, 1974, this Court on plaintiff's motion for partial summary judgment found defendant "to have been in violation of the [Federal Trade Commission] order between November 26, 1973 and March 1, 1974." 396 F.Supp. 1344 at 1352 (S.D.N.Y.1974). Having determined liability, the issue of penalties remains. Plaintiff seeks civil penalties of at least $250,000 and an injunction commanding obedience to its Order.

1. 15 U.S.C. §§ 21(*l*) and 45(*l*).

2. Section 5(*l*) of the Federal Trade Commission Act [15 U.S.C. § 45(*l*)] was amended as of November 16, 1973—ten days before the FTC order in the instant case became

Defendant has requested a hearing on the issue, at which it proposes to demonstrate that only nominal penalties in the amount of $1.00 should be assessed and that no injunction is warranted.

The applicable statutes [1] entrust to the Court's discretion—within the upper limit of $5,000 for each violation [2]—the amount of the civil penalties to be imposed for noncompliance with final FTC orders. United States v. Ancorp National Services, Inc. (2d Cir. 1975) 516 F.2d 198, at 202; United States v. J. B. Williams Company, Inc. (2d Cir. 1974) 498 F.2d 414, 438. Section 11(*l*) of the Clayton Act, 15 U.S.C. § 21(*l*), provides as follows:

"Any person who violates any order issued by the commission or board under subsection (b) after such order has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States. Each separate violation of any such order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the commission or board each day of continuance of such failure or neglect shall be deemed a separate offense."

It is the plaintiff's position that substantial penalties are warranted by defendant's alleged "continuing failure or neglect to obey" its final order. It argues that this Court's finding—on the motion for partial summary judgment—that defendant was "in violation of the order between November 26, 1973 and March 1, 1974" was tantamount to a finding that defendant was in violation of the order for each of the 94 days of

final—to enlarge the maximum penalty from $5,000 to $10,000 per violation. Plaintiff, however, has elected to proceed under the old $5,000 provision.

that time period.[3] Such was not our intention. Our focus on the motion for summary judgment was on whether there was any question of fact as to whether defendants had taken necessary steps to comply between November 1, 1973 and March 1, 1974, whereas now we must determine how many specific violations were committed. Moreover, the very language of the "continuing" violation provision and the interpretation given thereto by the courts preclude its application to the facts of this case. As the Supreme Court recently observed in United States v. ITT Continental Baking Co. (1975) 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148, this provision

". . . intended to assure that the penalty provisions would provide a meaningful deterrence against violations whose *effect* is continuing and whose detrimental *effect* could be terminated or minimized by the violator at some time after initiating the violation." (emphasis in original)

As examples of behavior intended to be covered by this provision, the court listed continuing conspiracies to fix prices or control production, maintenance of a billboard in defiance of an order prohibiting false advertising, failure to dissolve an unlawful merger, failure to eliminate an interlocking directorate and the acquisition of assets of other companies in violation of an order. *Id.* at 95 S.Ct. 926. Each of these types of violation necessarily continue on a day-to-day basis until a specific act is taken in abatement. On the other hand, in a situation involving price discrimination by means of illegal discounts—which by definition are individual in nature—each discriminatory transaction or sale must be the measure, since the granting of each illegal discount is a wholly independent and separately identifiable act which ends as soon as the specific transaction is consummated.

■ Having concluded that penalties cannot be assessed on a "continuing" vi-

olation basis we turn now to the question whether or not to hold a hearing as to how many separate violations of the order defendant committed and how much of a penalty to impose for each of those violations. Although ordinarily such a hearing would be necessary, in light of the peculiar circumstances of this case, I have determined not to schedule one. On the basis of defendant's own affidavits, the court can take judicial notice that there was a continuing pattern of violation which necessarily gave rise to a sufficient number of individual incidents to justify the penalty which it has determined to assess.

■ In mitigation, defendant has raised the very interesting but belated argument that since the FTC order became final, not only was Conso faced with new competition from *existing* competitors but it was also faced with *new* competitors offering new and lower prices to its customers. As a result, defendant argues, it was forced to continue to grant discounts to its customers in an effort to retain their business in the face of the competition from new sources. Although evidence of such events was obviously not "available" to defendant prior to the entry of the FTC order [see F.T.C. v. Ruberoid Co. (1952) 343 U.S. 470, 476, 72 S.Ct. 800, 96 L.Ed. 1081], that is not the end of our inquiry. The Court very carefully indicated in *Ruberoid* (at 476, 72 S.Ct. at 804) that the post-order defense of meeting competition could only come into being if the defendant could demonstrate the existence of "a *new* competitive situation involving *different* circumstances" (emphasis supplied). The facts of the instant case do not satisfy this test, for although the situations described by defendant in its affidavits may be "new", they are no "different" in legal effect than before.

■ The amount of penalties to be assessed in a case of this nature is normally determined by taking into account the following factors: (1) the wilful-

---

3. If this were true, defendant would be liable for a maximum of $470,000.

ness of the violation, or the good or bad faith of the defendant in meeting its obligation to comply with the order, (2) the ability of the defendant to pay the penalties, (3) the degree of harm to the public caused by defendant's failure to comply, and (4) the extent to which defendant may have profited by failing or delaying to comply. United States v. J. B. Williams Company, Inc., *supra*, 498 F.2d at 438; United States v. Swingline, Inc. (E.D.N.Y.1974) 371 F.Supp. 37, 46. One final factor implicit in all compliance actions and one which is particularly relevant to the instant action—is the necessity of vindicating the authority of the Federal Trade Commission. Since the Commission has no plenary power to enforce its own orders, it must enlist the aid of the federal district courts for that purpose. The penalty to be assessed must therefore be a significant one.

█ Contrary to the plaintiff's assertion that defendant's failure to comply with its order was wilful and in bad faith, it is quite clear to the court that such was not the case. Defendant's reliance upon post-order defenses as to the availability of which there is a "substantial ground for difference of opinion" [4] cannot be deemed to have been wilful or in bad faith.

█ In support of its argument for the assessment of nominal penalties only, defendant points to the deteriorating financial condition of its Conso Products Company Division—the real target of this action. As a result of its increasing losses—many of which it claims are directly linked to the market's reaction to the FTC order—defendant contends that it is financially unable to pay anything more than a nominal penalty. Be that as it may, the threatened financial position of a division of a company (albeit the division which is the subject of this order) cannot excuse payment of penalties by the company it-self—the named defendant in this action.

With respect to the third factor to be considered—that of the degree of harm to the public caused by defendant's failure to comply—plaintiff has conceded that such a factor is not really relevant in a price discrimination case of this nature. Unlike the situation in United States v. J. B. Williams Co., Inc., *supra*, this case does not involve a consumer protection-oriented order where noncompliance would directly injure the public. Rather, orders such as in the instant case are "inherently business—or competition—oriented matters and do not directly concern consumer protection considerations." Plaintiff's brief, at 8.

Finally, as to whether defendant may have benefited from its noncompliance, the record indicates that the opposite is true.

█ It is apparent, therefore, that of the five factors to be considered in determining the amount of penalty to assess, only that of the vindication of the Commission's authority is here pertinent. As to that factor no evidentiary hearing is necessary. In my judgment and based on the record before me, I have concluded to impose a penalty of $25,000, which amount is the minimum necessary to vindicate the Commission's authority in light of the seriousness of the matter involved. In addition, in light of our finding of good faith, the stepped up efforts of Conso's new management and the ongoing settlement negotiations between the parties, an injunction would not at this time be justified.

In summary, a penalty in the amount of $25,000 is assessed, and the motion for an injunction is denied without prejudice to a new motion based upon a showing that defendant is not acting in good faith.

So ordered.

4. F.T.C. v. Consolidated Foods Corporation, Memorandum and Order at 1 (December 24, 1975) (unreported).