UNITED STATES of America, Plaintiff,

v.

ATLANTICA, S.p.A., Defendant.

No. 77 Civ. 2737 (JMC).

United States District Court,
S. D. New York.

Oct. 25, 1979.

---

**3.** *See* the discussion in L. Tribe, American Constitutional Law 277–83 (1973).

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y. by Gilbert S. Fleischer, Atty.-in-Charge, U. S. Dept. of Justice, Torts Branch, Civ. Div., New York City, and Carol Neustadt, Federal Maritime Commission, Washington, D. C., for the Government.

Billig, Sher & Jones, P. C. by Stanley O. Sher, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Since the defendant admits violations of the Shipping Act of 1916, 46 U.S.C. §§ 815, 817(b)(3), the Court finds the defendant liable in civil penalties to the plaintiff in the total amount of $1,345,000.00.

## FACTS

The facts are undisputed, since the defendant agreed not to contest the complaint's allegations. At all pertinent times, the defendant Atlantica, S.p.A., an Italian corporation, was a common carrier by water in the foreign commerce of the United States, and a member of the North Atlantic Mediterranean Freight Conference [the "Conference"]. This Conference was subject to the Shipping Act of 1916, and had on file with the Federal Maritime Commission ["FMC"] tariffs establishing applicable rates for the carriage of cargo by its members.

From April 11, 1972, through November 17, 1976, Atlantica charged two of its shipping customers less than the rates applicable under the Conference tariffs. This was accomplished by issuing bills of lading showing charges in accordance with the tariffs, but then accepting less as full payment, or by rebating a portion of the charge to the shipper. During the period in question, Atlantica issued 269 bills of lading that were not a true reflection of the actual rates being charged, and permitted the two shippers to pay a combined total of $542,-107.60 less than they would have had to pay had Atlantica charged them according to the applicable tariff.

## DISCUSSION

The Court will impose penalties for the violations of Paragraph "Second" of section 16,[1] and of section 18(b)(3) [2] of the Shipping

---

1. Section 16 provides that:

   It shall be unlawful for any common carrier by water, or other person subject to this chapter, either alone or in conjunction with any other person, directly or indirectly—

   .   .   .   .   .

   .   .   .   To allow any person to obtain transportation for property at less than the regular rates or charges then established and enforced on the line of such carrier by means of false billing, false classification, false

Act of 1916, in accord with the statutory provisions in effect before the recent amendments to the Shipping Act.[3]

The defendant concedes that it has violated these sections. It asserts, however, that the violations consist solely of the rebates, and consequently that the number of violations is limited to the number of rebates, which, the Government agrees, were eleven. Not surprisingly, it has cited no case to support this position. As the Government points out, had this been the law, carriers could have limited their civil liability to $6,000 per shipper, regardless of the magnitude of their undercharges, simply by consolidating them into a single rebate.

■ Section 16 clearly prohibits false billing. The Court finds in this case that each bill of lading was a false billing, and hence a violation of section 16. Consequently, the total penalty that can be visited upon the defendant for these violations is 269 times $5,000.00, or a total of $1,345,000.00.

■ As to section 18(b), the Government has surprisingly conceded that there was no "continuing violation" in this case, and instead suggests that each bill of lading constitutes a separate violation of that section as well as of section 16. The Court disagrees with both these positions. As to the latter, the Court notes that some of the bills

bear the same date, and under the former law, which is applicable here, the penalty is to be imposed "for each day" the section was violated. By itself, this would not be much of an obstacle, because upon its own review, the Court has been able to determine that during the period in question, the defendant issued one or more of the false bills on at least 187 distinct days.

The question of whether there was a continuing violation, however, is far more important. Although section 18(b)(3) proscribes rebates, its more fundamental proscription is against price discrimination by selective rates differing from the applicable tariffs. In this case, the number and regularity of the false bills of lading, accompanied by the eventual rebates, overwhelmingly supports the conclusion that with each of the two shippers that benefited, the defendant had come to an agreement, albeit unwritten, for rates lower than the applicable tariffs. To one of the shippers, it issued 206 bills of lading over a period of approximately 192 weeks; to the other it issued 63 bills over approximately 43 weeks. In each case the bills issued fairly regularly: only six times was there a hiatus of over four weeks; only one of those was for more than five weeks.

weighing, false report of weight, or by any other unjust or unfair device or means. 46 U.S.C. § 815.

2. Section 18(b)(3) provides that:
   No common carrier by water in foreign commerce or conference of such carriers shall charge or demand or collect or receive a greater or less or different compensation for the transportation of property or for any service in connection therewith than the rates and charges which are specified in its tariffs on file with the Commission and duly published and in effect at the time; nor shall any such carrier rebate, refund, or remit in any manner or by any device any portion of the rates or charges so specified, nor extend or deny to any person any privilege or facility, except in accordance with such tariffs. 46 U.S.C. § 817(b)(3). This section also contains certain provisos, none of which are applicable here.

3. Before June 19, 1979, the penalty for violating section 16, paragraph "Second" was a "civil penalty of not more than $5,000 for each such

violation." 46 U.S.C. § 815 (1976) (amended 1979). Violations of section 18(b)(3) were punishable by "a civil penalty of not more than $1,000 for each day such violation continues." 46 U.S.C. § 817(b)(6) (1976) (amended 1979). On June 19, however, Congress substantially increased these penalties by passing the Shipping Act Amendments of 1979, Pub.L. 96–25, §§ 2, 3, 93 Stat. 71 (June 19, 1979). Now, the penalty for violating section 16, paragraph *Second, is not more than $25,000 per violation.* The penalty for violating section 18(b)(3) is "not more than $25,000 for each shipment on which a rebate or refund was paid," as well as "suspension by the [Federal Maritime] Commission of any or all tariffs filed by or on behalf of such carrier, or suspension of that carrier's right to utilize any or all tariffs of conferences of which that carrier may be a member, for a period not to exceed twelve months." *Id.* § 3. The parties have agreed that because the violations in this case preceded the 1979 amendments, the former penalties are applicable.

Unlike *FTC v. Consolidated Foods Corp.,* 396 F.Supp. 1353 (S.D.N.Y.1975), therefore, the instant case does not involve an arrangement whereby "the granting of each illegal discount [was] a wholly independent and separately identifiable act which end[ed] as soon as the specific transaction [was] consummated." *See id.* at 1356. Here, the defendant's arrangements with the two shippers were ongoing; it is very unlikely that each transaction was bargained for separately. Accordingly, the Court finds that the defendant engaged in two continuing violations, one spanning 1,349 days, the other 298 days, for a total of 1,647 days. Since the maximum penalty is $1,000 per day, the Court could impose a total penalty of $1,647,000 for the violations of section 18(b)(3). Added to the penalty for the section 16 violations, the maximum penalty that may be imposed in this case is $2,992,000.

■ The defendant argues that the Court should assess only a nominal penalty. It cites *FTC v. Consolidated Foods Corp., supra,* for the proposition that there are four factors in determining a proper civil penalty in a case such as this:

(1) the wilfulness of the violation, or the good or bad faith of the defendant . ., (2) the ability of the defendant to pay the penalties, (3) the degree of harm to the public . . ., and (4) the extent to which the defendant may have profited . . . .

*Id.* at 1357. The Court agrees, but adds another, which it feels to be most important: deterrence.

Atlantica argues that it did not act wilfully or in bad faith because other members of the Conference were offering rates below the tariffs. While this might be a mitigating factor, it does not prove absence of wilfulness; indeed, it would appear to imply just the opposite. Atlantica also argues that it cannot pay any penalty because it is in voluntary liquidation under Italian law. If this is true, then it cannot be a serious consideration for the Court, because the amount of the penalty would be irrelevant.

Finally, Atlantica argues that its violations neither profited it nor harmed the public. The first point is preposterous. Because of the discounts, Atlantica secured total net freight revenues of over $1.5 million. The second point is simply not a matter for debate. By passing the Shipping Act Amendments of 1979, substantially increasing the applicable penalties, Congress has underscored its desire to curb price discrimination in all its forms, including rebating.[4] And as Congress also noted, deterrence cannot be achieved by penalties that fall short of the illegal profits that the wrongdoers stand to gain.[5]

## CONCLUSION

In accordance with the foregoing, the Court imposes a civil penalty of $5,000.00

4. Rebating continues to be a serious problem in our foreign ocean commerce. . . . It has caused discrimination between shippers; has contributed to loss of cargoes and bankruptcy for U.S.-flag liner operators; and has created instability in our foreign commerce. Repeated attempts at diplomatic resolution have been historically unavailing. The widely heralded efforts by the Administration's Maritime Policy Task Force have yielded no solution and, as of this date, have resulted only in international embarrassment.

Of immediate concern is the rank disparity caused by enforcement of our laws prohibiting secret discounts most severely against U.S.-flag carriers. As a result, more severe fines, more extensive disclosures, more stringent settlement requirements, impairment of shipper goodwill due to disclosures, and criminal conspiracy charges are inflicted on

U.S. carriers but not on their foreign counterparts. Enactment of [the Amendments] will not only deter ocean malpractices, but more importantly, it will promote legitimate competition without which U.S.-flag carriers cannot survive.

H.R.Rep.No.96–232, 96th Cong., 1st Sess. 10 (1979), U.S.Code Cong. & Admin.News 1979, pp. 1392, 1400.

5. The penalties for rebating under the existing provisions of the Shipping Act, 1916, have not been sufficient to take the profit out of rebating, and the difficulty of enforcing these penalties often makes rebating worth the risk.

125 Cong.Rec. H4,007 (daily ed. June 4, 1979) (remarks of Representative Murphy in support of the Shipping Act Amendments of 1979).

for each of the 269 violations of section 16, for a total civil penalty of $1,345,000.00.[6]

SO ORDERED.

---

**6.** The Court has power to impose civil penalties for the section 18(b)(3) violations. But since the violations of this section result from the same conduct that constituted violations of section 16, and since the Court has imposed a maximum penalty under that section, the Court exercises its discretion not to impose a penalty for the section 18(b)(3) violations.