DOROTHY KILLEEN vs. HARMON GRAIN PRODUCTS, INC.
& another.[1]

Norfolk.  April 6, 1979. — December 15, 1980.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Negligence,* Manufacturer, Retailer, Candy-flavored toothpicks.  *Sale,*
Warranty.

In an action to recover for injuries sustained by the minor plaintiff when
she fell while sucking on a cinnamon-flavored toothpick manufactured
and sold at retail by the defendants, there was nothing in the evidence
to support the plaintiff's breach-of-warranty theory of recovery under
G. L. c. 106, §§ 2-314 or 2-315, nor was there any merit to the plain-
tiff's contention that such unreasonable danger inheres in toothpicks
that the defendant should be subjected to strict liability.  [22-24]

In a products liability case arising from injuries sustained by the minor
plaintiff when she fell while sucking on a cinnamon-flavored tooth-
pick, neither the manufacturer nor the retailer had a duty to warn the
user of the dangers likely to be encountered in using the toothpicks.
[24]

In a negligence action to recover for injuries sustained by the minor plain-
tiff when she fell while sucking on a cinnamon-flavored toothpick, the
judge erred in directing a verdict for the defendant who sold the
toothpick at retail where there was sufficient evidence to warrant find-
ings that the sale was made directly to a child; that the toothpick was
sharp and shatterable; that the toothpick, by reason of its candy
flavoring, was attractive to young children; that the manner and dura-
tion of its expected use posed a foreseeable danger; and that normal
play for a child the plaintiff's age would be inconsistent with safe use
of the product.  [24-28]

In a negligence action to recover for injuries sustained by the minor plain-
tiff when she fell while sucking on a cinnamon-flavored toothpick
manufactured by the defendant, the defendant was entitled to a
directed verdict where there was no evidence that the toothpicks were
advertised or marketed to children, that the manufacturer knew of
sales to children, or that such sales were a significant portion of the
product's total market.  [28-29]

[1] Oakdale Variety Store, Inc.

CIVIL ACTION commenced in the Superior Court on August 13, 1974.

The case was tried before *Richardson*, J., a District Court judge sitting under statutory authority.

*Mark G. Cerel* for the plaintiff.

*John B. Johnson* for Oakdale Variety Store, Inc.

*Louis Barsky* for Harmon Grain Products, Inc.

ARMSTRONG, J. In 1972, the plaintiff, then ten years old, fell from a jungle gym while she was sucking a cinnamon-flavored toothpick manufactured by the defendant Harmon Grain Products, Inc., and sold at retail by the defendant Oakdale Variety Store, Inc. She landed face down. The toothpick broke and punctured her lower lip in a manner that left her with a disfiguring linear scar three fourths of an inch long running horizontally beneath her lower lip. By her father she brought actions against both defendants for negligence and breach of warranty.[2] The trial judge directed verdicts in favor of the defendants, and the case comes to us on the plaintiff's appeal from the ensuing judgment.

The testimony most favorable to the plaintiff, supplemented by the manufacturer's answers to interrogatories (which were read in evidence), would have warranted the jury in finding the following facts. The plaintiff was attending fourth grade at the time of the accident. One of her classmates was the daughter of the proprietor of a small, family-run variety store (the defendant Oakdale Variety

---

[2] The complaint as amended contained ten counts, five by the minor plaintiff against, respectively, the manufacturer (Harmon Grain Products, Inc.), the retailer (Oakdale Variety Store, Inc.), the keeper of the variety store, the storekeeper's minor child, and a teacher at the school (who was alleged to have had the responsibility for supervising the activities of the minor plaintiff and her classmates), and five by the father of the minor plaintiff, against the same defendants, for the medical expenses which were incurred shortly after the accident and those which, according to the testimony of the plastic surgeon, must be incurred now in order to reduce the facial scar. All counts against the teacher, the storekeeper and the storekeeper's daughter were waived prior to trial. After trial, but before direction of verdicts, the father's remaining counts for consequential damages were similarly waived. As a result the minor plaintiff is the sole appellant.

Store, Inc.) located about a quarter of a mile from the school. Occasionally the daughter would bring candy to the school which had been ordered by her friends; in such instances her father had instructed her to collect the purchase price and turn it over to the store. It was in that fashion that the cinnamon-flavored toothpick had come into the hands of the plaintiff.

The toothpicks were kept for sale in the candy case. They were packaged in glassine envelopes, roughly two by two and one half inches, which were designed with a striped background and a small picture of a toothpick with a face, and which had as their most prominent feature the names of the product ("Hot Cinnamon Fire Pix") and the manufacturer, a message which said, "Stop Air Pollution — Flavor Your Breath — Refreshing," and another message which said, "Twelve Cinnamon Flavored Pix — Imitation Flavors." The toothpicks looked like ordinary, untreated, wooden toothpicks of the common flat variety, narrow and pointed at one end and slightly broader and rounded at the other. The toothpicks were one of approximately five hundred candy items sold in the variety store and sold for a nickel. They were sometimes bought by adults but were bought more often by children. The proprietor bought them (and his entire line of candy items) from a wholesaler in Cambridge. The envelopes in which the toothpicks were packaged contained no warnings of any kind. Neither did the proprietor receive any warnings, oral or written, from the wholesaler. The proprietor had no dealings with the manufacturer.

A breach-of-warranty theory of recovery, alleged to sound under G. L. c. 106, §§ 2-314 (merchantability) or 2-315 (fitness for particular purpose), is of no pertinence to any set of findings permissible on the evidence. A contention is advanced that the particular toothpick which pierced the plaintiff's lip was improperly manufactured, being pointed at both ends, rather than being somewhat rounded at one end,[3] but if

---

[3] The plaintiff testified that the toothpick, when extracted from her mouth, had four pointed ends, two of which were presumably created when the toothpick broke.

that is true there was nothing in the evidence to suggest that that peculiarity in the toothpick played any role in causing the plaintiff's injury. If the evidence can be said to have any tendency in this respect, it is that one of the broken ends pierced the lip. Besides, as the judge observed, toothpicks come in another common shape, with a rounded shaft and sharp points at both ends, and a consumer would presumably regard a toothpick with no pointed ends as defective rather than the other way around. Another contention is advanced that the toothpicks were marketed as candy but were not fit for that purpose because of the pointed ends. Such a theory would be plausible if a foreign object with sharp ends or edges were concealed in something to eat and cut the mouth of the unsuspecting consumer. But the toothpicks here were not marketed as candy, in the sense of something to be consumed in its entirety, but as toothpicks with a cinnamon flavor, made to suck, not to eat; and, as the product was exactly what it was represented to be, neither more nor less, with no hidden dangers or unpredictable propensities, the statutory warranties were not breached. See *Back* v. *Wickes Corp.*, 375 Mass. 633, 642 (1978), for the factors to be considered in determining design defects.

We similarly reject any contention that such unreasonable danger inheres in toothpicks — flavored or otherwise — that the manufacturer or distributor is subjected to strict liability. See the discussion of Restatement (Second) of Torts § 402A (1965) in *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 629-631 (1978). See also *Tibbetts* v. *Ford Motor Co.*, 4 Mass. App. Ct. 738, 741 (1976). Toothpicks, like pencils, pins, needles, knives, razor blades, nails, tools of most kinds, bottles and other objects made of glass, present obvious dangers to users, but they are not unreasonably dangerous, in part because the very obviousness of the danger puts the user on notice. It is part of normal upbringing that one learns in childhood to cope with the dangers posed by such useful everyday items. It is foreseeable that some will be careless in using such items and will be injured, but the policy of our law in such cases is not to shift the loss from

the careless user to a blameless manufacturer or supplier. See *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230, 234 (1975), and cases cited; *Roy* v. *Star Chopper Co.*, 584 F.2d 1124, 1129 (1st Cir. 1978), cert. denied, 440 U.S. 916 (1979); *Venezia* v. *Miller Brewing Co.*, 626 F.2d 188, 190-192 (1st Cir. 1980). Rather, liability of the manufacturer or supplier must be grounded in negligence, in a want of the care which a reasonable person should exercise in the circumstances. *Smith* v. *Ariens Co.*, 375 Mass. 620, 625-626 (1978).

Negligence, in products liability cases, typically consists of a failure in the design, manufacture, or inspection or a failure to warn the user of the dangers which he is apt to encounter in using the product. See *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173-174 (1977). None of these, we think, offers a plausible theory of liability in the instant case with respect to either the manufacturer or the retailer. Of the four, only the theory of failure to warn warrants discussion.

A duty to warn is not imposed by law as a mindless ritual. A warning is not required unless "the person on whom [the] duty rests has some reason to suppose a warning is needed." *Carney* v. *Bereault*, 348 Mass. 502, 506 (1965). *Schaeffer* v. *General Motors Corp.*, 372 Mass. at 174. "The duty to warn extends to concealed, nonobvious dangers." *Carlson* v. *American Safety Equip.*, 528 F.2d 384, 387 (1st Cir. 1976). The dangers inherent in toothpicks are both reasonable in scope and obvious to nearly all; as to such dangers, if a warning to the consumer is needed, it will almost certainly do no good. The plaintiff, incidentally, admitted that her parents had warned her against playing with sharp objects in her mouth; but whether they had or not, we think that a manufacturer or retailer is justified, as matter of law, in making that assumption.

The plaintiff makes a more plausible contention, however, that candy-flavored toothpicks should not be sold to children, with or without warnings. The suggestion here is that substantial numbers of children can be counted to use the toothpicks unsafely, even though forewarned. Under

Restatement (Second) of Torts § 390 (1965), which, with qualifications, states our own law (*Leone* v. *Doran*, 363 Mass. 1, 13 n.3, *S.C.*, 363 Mass. 886 [1973], 369 Mass. 956 [1975]), "[o]ne who supplies . . . a chattel for the use of another whom the supplier knows . . . to be likely because of his youth . . . to use it in a manner involving unreasonable risk of physical harm to himself . . . is subject to liability for physical harm resulting to [him]."

From this vantage the case is analogous to dangerous toy cases. As a group those cases are not particularly helpful to the plaintiff; more often than not they result in exoneration of the supplier, provided that the toy functions properly and the dangers are obvious even to children. See, e.g., *Morris* v. *The Toy Box*, 204 Cal. App. 2d 468 (1962) (bow and arrows); *Bojorquez* v. *House of Toys, Inc.*, 62 Cal. App. 3d 930 (1976) (slingshot); *Smith* v. *Nussman*, 156 So. 2d 680 (Fla. App. 1963) (slingshot); *Pitts* v. *Basile*, 35 Ill. 2d 49 (1966) (darts); *Maramba* v. *Newman*, 82 Ill. App. 2d 95 (1967) (boomerang); *Rader* v. *Milton Bradley Co.*, 62 Misc. 2d 610 (Cir. Ct. N.Y. 1970) (a ball toy called "Time Bomb"); *Levis* v. *Zapolitz*, 72 N.J. Super. 168 (1972) (slingshot); *Strahlendorf* v. *Walgreen Co.*, 16 Wis. 2d 421 (1962) (toy plane with a rubber-band-and-stick catapult). But see *Victory Sparkler & Specialty Co.* v. *Latimer*, 53 F.2d 3 (8th Cir. 1931) (poisonous explosive pellet); *Moning* v. *Alfono*, 400 Mich. 425 (1977) (toy slingshot marketed specifically to children). It is equally true, however, that on close reading many of the cases turn out to be unhelpful to the defendants, because they are easily distinguishable on the facts. *Morris* v. *The Toy Box*, *Maramba* v. *Newman*, and *Stahlendorf* v. *Walgreen Co.*, all involved sales to adults, rather than direct to the children; in such a situation the retailer is normally justified in expecting that children too inexperienced to cope with the dangers will not be permitted the use of the toy without supervision. See *Moning* v. *Alfono*, at 456. In *Pitts* v. *Basile*, the case against the retailers who sold the darts directly to an eight year old child was not before the court on appeal, and the court expressly disavowed

any ruling on the retailer's negligence. The wholesaler, against whom the evidence warranted a finding that he had packaged and marketed the darts in a manner calculated to induce children to buy them, was held not liable for want of causation, the evidence also having established that the manner of packaging and marketing was not responsible for the child's purchase of the darts. On the other hand, the *Moning* and *Victory Sparkler* cases represent holdings that suppliers may be liable for marketing toys directly to children too young to handle them with safety. The same is true, under our own cases, of nontoy items sold directly to children. In *Carter* v. *Towne*, 98 Mass. 567 (1868), *S.C.*, 103 Mass. 507 (1870), and *Pudlo* v. *Dubiel*, 273 Mass. 172 (1930), retailers were subject to tort liability for selling gun-powder (*Carter*) and B.B. shot (*Pudlo*) to minors. Such items are obviously more hazardous than toothpicks, measured by the severity of the injury which is likely to result from their misuse; but that is a matter of degree, and we see no reason in principle why a jury might not be permitted to return a finding of negligence against one who entrusts a young child with common objects such as, e.g., needles, knives, scissors or blades, glassware, or even toothpicks, the safe use of which requires precautions beyond what is reasonably to be expected of a child of his age. The boundaries within which evidence may be said to warrant a finding of negligence must be established not by logic but by experience, and, in determining those boundaries, we should not disregard the fact, gleaned from general experience, that parents and other adults commonly not only warn children of the dangers in playing with such objects but seek to deprive young children of ready access to them. It is not surprising that the plaintiff's mother, according to the testimony, reacted to the accident by angrily discarding the package with the remaining toothpicks, and it is reasonable to suppose that many parents would object to a retailer's selling their children candy-flavored toothpicks.

Against that common experience it seems to us impossible to conclude, as matter of law, that there is never negligence

involved in retail sales of candy-flavored toothpicks to children, regardless of age. There must, of course, be a cut-off age, not because of its bearing on the child's contributory negligence, which does not act as a bar to recovery in this jurisdiction (see G. L. c. 231, § 85, as inserted by St. 1969, c. 761, § 1, and, by the terms of St. 1973, c. 1123, § 2, in effect as to causes of action arising prior to January 1, 1974), but because of its bearing on the question of due care of the retailer, who must, at some point, be justified as matter of law in assuming that his customer shoulders full responsibility for the proper use of the product. We think that cannot be said, as matter of law, of a ten year old child's use of candy-flavored toothpicks, although the case is borderline in this respect. There was testimony that the toothpicks retained their flavor for ten minutes, roughly, of sucking; and a jury would be warranted in finding it reasonably foreseeable that a ten year old child would not invariably refrain from other activity during that period but might instead resume the rough and tumble play characteristic of the age, sucking the toothpick as absent-mindedly as one might chew gum. In this respect the toothpick is different from, for example, ice cream on a stick, or cotton candy, or candied apples on a stick, all of which involve some degree of concentration inconsistent with active play.[4]

We conclude, therefore, that the jury should have been permitted to consider the question of the retailer's negligence. We base this conclusion on the convergence of several factors which could be found from the evidence: that the sale was made directly to a child rather than to an adult who would presumably have provided supervision;

---

[4] For the same reason toothpicks differ from many of the dangerous toys discussed in the cases cited above: slingshots, darts, and bows and arrows require the child's active attention to trigger the moment of greatest danger. More dangerous, in this respect, are air guns or dart guns which may be left in a condition of readiness to shoot. It should be mentioned that in Massachusetts it is unlawful, by statute, to sell slingshots or fireworks. See G. L. c. 269, § 12; c. 148, § 39. It is also illegal to sell or, except for a parent, guardian or teacher, to furnish an air rifle or BB gun to a minor under eighteen. G. L. c. 269, § 12A.

that the toothpicks were sharp, shatterable, and equally sharp in shattered condition; that the toothpicks, by reason of their candy flavoring, were attractive to young children; that the manner and duration of their expected use posed a foreseeable danger; and that normal play for a child the plaintiff's age would involve rough and tumble inconsistent with safe use of the product.

It does not necessarily follow, however, that there was evidence of the manufacturer's negligence. Presumably, the manufacturer does not know of a sale to any particular customer. A comparable basis for a finding of negligence against a manufacturer would involve the manufacturer's marketing its product, through advertising, packaging, or distribution, in a manner calculated to induce direct purchases by children or others whose use of the product would involve unreasonable risk of injury. Without such a basis a finding of liability would imply that the manufacturer is subject to a legal duty to guard, by warnings or otherwise, against his products' falling into the hands of children, a duty which might reasonably be required with respect to a product that is particularly attractive to children and inherently hazardous (an example is the "spit devil" poisonous explosive in *Victory Sparkler & Specialty Co.* v. *Latimer, supra*, which was shaped like and wrapped like a lozenge and had a pleasant flavor), but which, we hold, is not required with respect to such everyday objects as pins, needles, scissors, knives, toothpicks, or objects made of glass. Compare *Venezia* v. *Miller Brewing Co.*, 626 F.2d at 191-192; *Geary* v. *H.P. Hood & Sons*, 336 Mass. 369, 371 (1957).

Here the case against the manufacturer falls down. There was no evidence that Hot Cinnamon Fire Pix were advertised, to children or otherwise. The package is not suggestive of a product marketed to children and seems more obviously directed towards a more mature market, particularly by its appeal to "flavor your breath." Distribution through a wholesaler who also sold candy carries by itself no connotation of marketing particularly to children. There

was nothing in the evidence to show that the manufacturer knew of sales to children or that such sales were a significant portion of the product's total market. The burden of proof on this point was, of course, the plaintiff's, and it was not met.

The judgment is reversed. The order allowing the motion for a directed verdict in favor of the defendant Harmon Grain Products, Inc., is affirmed. The order allowing the motion for a directed verdict in favor of the defendant Oakdale Variety Store, Inc., is reversed, and the case is to stand for retrial against that defendant.

*So ordered.*