Robert LOWERY and Thelma Lowery, Plaintiffs,

v.

AIRCO, INC., Banite, Inc., and Linde Division, Union Carbide Corp., Defendants.

Civ. A. No. 86–0793–Y.

United States District Court, D. Massachusetts.

Sept. 8, 1989.

John E. McCabe, Law Offices of Carroll E. Ayers, Wakefield, Mass., for plaintiffs.

Charles K. Mone, James Casey, Campbell & Assoc., Boston, Mass., for AIRCO.

Thomas Dailey, Joseph Cotter, Paul Davison, Goodwin Procter Hoar, Boston, Mass., for Linde Division/Union Carbide.

Martin Rooney, Boston, Mass., for Banite, Inc.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Robert Lowery ("Lowery"), a professional welder of 40 years experience, was welding with an oxygen-acetylene welding system at a reclamation site at the South Boston Army Base, repairing the track pads of a heavy earth mover. The system involved the use of an oxygen tank regulator made by the defendant AIRCO, Inc. ("AIRCO") and an oxygen tank and shut-off valve made by the defendant Linde Division, Union Carbide Corporation ("Linde"). The equipment exploded, injuring Lowery. The defendant Banite, Inc. ("Banite") is the manufacturer of "DL," a waterless hand cleaner designed, as the product label states, "for industrial use." Banite moves for summary judgment.

Entry of summary judgment is appropriate where the plaintiff, having had adequate time for discovery, still "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The test to be applied is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

On the record before the Court, a jury could reasonably find the following facts in Lowery's favor. On the day of the explosion, just before lunch, Lowery exhausted the contents of the oxygen tank he was using for his acetylene torch. Before removing and replacing the spent tank, he decided to eat. Lowery then washed his hands, using "DL" hand cleaner manufactured by Banite. There was some residue of the hand cleaner on his hands, which he could not get off with a paper towel. After eating his sandwich, he returned to work. He disconnected the regulator from the empty tank, placed his hands on the regulator's coupling with the tank, and reconnected the same regulator to the replacement oxygen tank. He used his bare hands, coated still with residue from the handcleaner. He cracked open the oxygen tank valve to allow the regulator and hoses to fill and checked for leaks. Then he began to open the oxygen tank valve fully. There was an explosion. Laboratory analysis of the equipment suggests that combustion occurred when the pressurized oxygen from the full tank passed out of the tank through its valve, creating friction, and was ignited by the presence of a foreign combustible fuel source in the oxygen tank valve and regulator. Laboratory tests on "DL" hand cleaner indicate that it explodes upon exposure to oxygen heated to 575 degrees celsius.

The parties agree that the law of the Commonwealth of Massachusetts applies. Lowery alleges a breach of warranties of merchantability and fitness for particular purpose,[1] and that Banite was negligent in

---

**1.** In Massachusetts, liability for breach of warranty of merchantability is governed by M.G.L. c. 106, secs. 2–314—2–318, and "these provisions are congruent, in all material respects, with the principles expressed in Restatement (Second) of Torts sec. 402A." *Colter v. Barber–Greene Co.*, 403 Mass. 50, 61, 525 N.E.2d 1305 (1988); *Back*

*v. Wickes Corp.*, 375 Mass. 633, 640, 378 N.E.2d 964 (1978). Section 402A of the Restatement provides:

**402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.**
(1) *One who sells any product in a defective condition unreasonably dangerous to the user*

failing to warn potential users such as himself of the dangers associated with the product's use. Mrs. Lowery also asserts a related claim in this action for loss of consortium. Lowery has settled claims against AIRCO and Linde. Banite moves for summary judgment on three grounds: (1) because Banite was not negligent and did not breach any warranties by allegedly failing adequately to warn Lowery; (2) because Lowery has failed to establish that Banite's product was in fact involved in the explosion; and (3) because there is no evidence that any failure to warn was the proximate cause of Lowery's injury.

Banite first argues that the risks of handling the regulator coupling unit after washing with "DL" hand cleaner were obvious to Lowery, a man with forty years of experience dealing with this type of equipment, and therefore, no duty to warn of risks associated with such conduct should be imposed.

Massachusetts law is clear that where the danger presented by a given product is obvious, no duty to warn may be required because a warning will not reduce the likelihood of injury. *Colter v. Barber–Greene*, 403 Mass. at 59, 525 N.E.2d 1305; *Uloth v. City Tank Corp.*, 376 Mass. 874, 880, 384 N.E.2d 1188 (1978). Whether a danger is obvious is determinable by reference to objective criteria. *See Killeen v. Harmon Grain Products, Inc.*, 11 Mass.App.Ct. 20, 413 N.E.2d 767 (1980) (risks of chewing a sharp toothpick while playing on jungle gym held obvious to adults). Generally, where the risk is readily apparent to the objective eye, there is no duty to warn as matter of law, either with respect to a negligence claim based upon the breach of such a duty, or with respect to a breach of warranty claim based on the failure to provide such a warning as would render the product not unreasonably unsafe. *See id.* at 23–24, 413 N.E.2d 767. Also, the knowledge of the particular plaintiff who works with a given product regularly may be relevant. *See Colter v. Barber–Greene*, 403 Mass. at 59, 525 N.E.2d 1305 (the risk of machine operator greasing machine gears while "guard" covering exposed gears left open was known to the plaintiff). Where the risk is peculiarly known to the plaintiff, a defendant may argue that any failure to warn was not the proximate cause of the plaintiff's injuries. *See id.*

█ Since the alleged risk at issue in this case is not obvious to the objective eye, Banite's argument on this point goes to Lowery's own knowledge of the risk and, therefore, should be treated under the aegis of proximate causation. Banite asserts the record is clear that Lowery knew of the dangers of using any greasy or oily substance near the oxygen regulator on his torch equipment, understood that the "DL" product was "greasy in nature," and therefore argues that there is no genuine issue as to whether any warning would have prevented his injuries. This argument is

---

or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer....

(2) The rule stated in Subsection (1) applies although

(a) The seller has exercised all possible care in the preparation and sale of his product....

The Restatement defines a seller's strict liability for harm suffered by a user or consumer of a seller's product. Massachusetts' warranty of merchantability, adopting this view, focuses on whether the product was defective and unreasonably dangerous and not on the conduct of the user or seller. *Colter*, 403 Mass. at 62, 525 N.E.2d 1305 (citing *Correia v. Firestone Tire and Rubber Co.*, 388 Mass. 342, 355, 446 N.E.2d 1033 [1983]; *Hayes v. Ariens Co.*, 391 Mass. 407, 413, 462 N.E.2d 273 [1984] ). "[T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect ... that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained...." Restatement (Second) of Torts sec. 402A, comment c.

Nonetheless, a product manufacturer may assert a defense to a warranty claim where it has adequately warned the consuming public about risks a consumer would reasonably not expect to find in the product—either by warnings on the product label or otherwise. "[A] product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts sec. 402A, comment j.

not persuasive. First, Lowery's affidavit specifically answers it. Lowery does not deny that he knew from his experience of the dangers of oil or grease in proximity to acetylene torch equipment. He simply denies that he considered "DL" to be "greasy in nature," and, to the contrary, considered it to be a product to be used to *remove* grease from his hands. On this record there is a genuine issue whether Lowery was aware that Banite's hand cleaning product contained material that could cause combustion when used with oxygen-acetylene welding equipment.[2] Accordingly, to the extent that Banite's motion for summary judgment rests on this ground, it is denied.

There are two further grounds on which Banite asserts in this motion that Lowery has not met his *Celotex* burden. Again, resolution of Banite's arguments turns on whether Lowery can prove causation. Lowery must come forward with some proof that Banite's product actually was involved in the explosion that caused the injury—causation in fact—and some proof that the manufacturer's failure to warn caused the injury to occur—proximate causation. Analysis is identical with respect to Lowery's negligence theory and his warranty theory, for causation must be proven under a warranty theory as well as a negligence theory. Simply put, the first question is whether there are facts sufficient for a jury to conclude that "DL" was involved in the explosion that resulted in the plaintiff's injuries. The next question is whether a jury would be warranted in finding that, more probably than not, but for Banite's failure to warn of a risk inherent in the product it designed, this injury would not have occurred.

On this record, sufficient evidence exists for a jury to infer that "DL" hand cleaner was transferred from Lowery's hands to the inside of the oxygen tank valve. Lowery has stated under oath that there was a residue of "DL" on his hands when he handled the oxygen tank regulator's coupling. The record reveals that a black residue was found in the valve area. Laboratory analysis indicates that this substance "could" be "DL" residue. All other legal issues to one side, Lowery has satisfied his burden of production and placed his case in the hands of the jury if he can come forward with some competent evidence that this material more probably than not was the source of the oxygen's ignition.

Lowery has come forward with an affidavit (albeit after this motion was filed) in which one Charette, proffered as an expert in this field, in answer to a hypothetical question asking him to assume that "DL" waterless hand cleaner had gotten into the regulator and that no other foreign combustible substance was present, states that it would have been "the competent contributing cause because it provided the fuel for the explosion." Charette Aff. at para. 3–4, Plaintiff's Opposition, Exhibit A. Since these are reasonable inferences from the evidence proffered by Lowery in this case, the Charette affidavit would normally be sufficient to survive a motion for summary judgment.[3]

Banite claims, however, that the Charette affidavit is a sham, that it manufactures new facts inconsistent with Charette's previous deposition testimony merely to avoid summary judgment. There is considerable force to this argument.

■ When a party has given clear answers to unambiguous deposition ques-

---

**2.** It is a jury question whether the warning that accompanied "DL" was, in fact, adequate in light of the risks that the use of "DL" hand cleaner presents in industrial use. *See MacDonald v. Ortho Pharmaceutical Corp.,* 394 Mass. 131, 140, 475 N.E.2d 65 (1985), *cert. denied,* 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985); *Fiorentino v. A.E. Staley Manufacturing Co.,* 11 Mass.App.Ct. 428, 434–36 & n. 8, 416 N.E.2d 998 (1981), *rev. denied,* 383 Mass. 892 (1981).

**3.** It is true that "expert opinion, stated in terms of possibilities, does not satisfy the plaintiff's burden of proof, namely, to establish by a preponderance of the evidence the existence of a design defect which caused the plaintiff's injuries." *Goffredo v. Mercedes–Benz Truck Co.,* 402 Mass. 97, 102–103, 520 N.E.2d 1315 (1988) (citations omitted). Thus, what saves Lowery's case is Charette's opinion that DL would have been "the competent contributing cause."

tions, he or she cannot raise an issue of fact by submitting a subsequent affidavit that merely contradicts the deposition testimony. *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 861–62 (7th Cir.1985); *Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). *See also Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969). Here, however, the Court need not address how far this principle should be extended to address a non-party's affidavit that conflicts with prior deposition testimony because, on close examination, it is apparent that there is no direct conflict between Charette's deposition testimony and the subsequently filed affidavit. Rather, the situation here appears more analogous to that treated in *Kennett–Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980), in which a genuine issue was held to have been raised by virtue of an affidavit submitted by the defendant officer of the corporate plaintiff, even though it seemed to conflict with his own deposition. There, the court noted that the deposition testimony, considered *in toto,* created ambiguities about material issues that were clarified by the later-filed affidavit. *Kennett–Murray*, 622 F.2d at 894–95.

Here, at Charette's deposition he was unable to testify as to the nature of the burnt substance found in the body of the regulator. He stated that, based on the finding by the laboratory analysts that there was a combustible impurity found within the regulator coupling, he believed that "DL" hand cleaner "could" have caused the explosion, because it is a combustible substance, but that he had no personal knowledge how it may have gotten in there. *See* Charette Deposition, Vol. 1 at 72–73; Vol. 2 at 37, 56, 61, 64. In his affidavit, though, in answer to a hypothetical question asking him to assume that Lowery put his hands on the regulator's coupling in the oxygen tank at a time when his hands were still coated with residue from "DL" hand cleaner and to assume that "DL" contains a combustible material, he stated that it was his opinion that the "interjection [sic] of the "DL" waterless hand cleaner … into the regulator … was the competent contributing cause because it provided the fuel for the explosion." Charette Aff. at para. 4.

While there was nothing patently ambiguous about his prior deposition testimony, there is nothing so inherently contradictory about Charette's subsequent affidavit as to render it a mere sham. His inability definitively to identify "DL" as the culprit at his deposition is explained by his lack of personal knowledge as to the underlying facts. When asked to assume the truth of key underlying facts, though, he offered his opinion that the "DL" "was" the producing cause. This presents a jury question. Even assuming that there is a discrepancy between the deposition testimony and the affidavit, "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Kennett–Murray*, 622 F.2d at 894. It is the jury's role to resolve issues of credibility. To the extent, therefore, that Banite's motion for summary judgment would require this Court to strike the Charette affidavit, or ignore it as a sham designed merely to avoid summary judgment, it is denied.

Banite's last argument again goes to causation: because Lowery cannot say that he definitely read the "DL" product label on the particular can of hand cleaner he used that day, he cannot establish a proximate causal link between any failure to warn and his injury. Banite points to Lowery's deposition—in which Lowery admitted that he could not remember whether he read the label of the particular "DL" hand cleaner—to argue that there is no evidence that Banite's failure to warn played any role in Lowery's injury. That is, any warning given by Banite would not have reached Lowery, since there is no evidence that he ever read the product label.

■ The record before the Court does not compel this conclusion. Lowery claims that he surely read the product label on "DL" hand cleaner at some time or other, but he has no recollection whether he read the label of a "DL" jar on the day of the accident. *See* Lowery Deposition at 101;

Lowery Affidavit at para. 1. While it is a neat issue—and an open question in this Circuit—whether a plaintiff in a failure to warn case governed by Massachusetts law must come forward with affirmative evidence of his reliance on the inadequate warning to meet his burden under *Celotex*, the Court need not address this issue. Rather, as it must in ruling on a summary judgment motion, the Court simply accepts Lowery's affidavit, in which he asserts that he "read that ["DL"] label in the past on many occasions" and that he was "aware in general terms of the language and contents of the label." Lowery Affidavit at para. 1. There is thus evidence on the record before the Court sufficient for a jury to conclude—if it were to reach the issue—that, but for an inadequate warning of product risks, Lowery more likely than not would not have been injured.

For the foregoing reasons, Banite's motion for summary judgment is denied.