Sheilah S. MAHAN, Plaintiff,

v.

BOSTON WATER AND SEWER COMMISSION, Ralph Donofrio, and Joseph Foley, Defendants.

No. 97–11136–WGY.

United States District Court, D. Massachusetts.

May 15, 1998.

Henry F. Owens, III, Lane, Altman & Owens, Boston, MA, for Sheilah S. Mahan.

Robert E. Holland, John Foskett, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, Catherine S. Reidy, Deutsch Williams Brooks, DeRensis Holland & Drachman, P.C., Boston, MA, for Boston Water & Sewer Commission and Ralph Donofrio.

## MEMORANDUM OF OPINION

YOUNG, District Judge.

The plaintiff, Sheilah Mahan ("Mahan"), brings this employment discrimination action against her employer, the Boston Water and Sewer Commission ("the Commission") and her supervisors Ralph Donofrio ("Donofrio") and Joseph Foley ("Foley") (collectively "the Defendants"). At the summary judgment hearing on the Defendants' Motion for Summary Judgment, this Court dismissed all claims against Donofrio and Foley, concluding that there is no individual liability under Title VII and no individual liability under Chapter 151B as to the claims raised by Mahan. The Court also dismissed all claims against the Commission except for Mahan's sexual harassment claims (Counts I and IV). These claims are based on the failure of the Commission to take adequate remedial action to address sexual harassing conduct by her fellow workers, namely, the vandalism of her car with urine and pornography and the making of kissing and sucking sounds by male co-workers. At the final pre-trial conference, the Court orally denied the Commission's motion for summary judgment as to Counts I and IV. This opinion explains that denial.

## BACKGROUND

In May, 1992, Mahan was hired by the Commission as Senior Storekeeper. In May, 1994, Mahan applied for an Exempt position as Deputy Superintendent of Special Operations. Mahan claims that shortly after her application rumors were spread that she would likely get the job because she was a woman and resided in the City of Boston. She further alleges that during this period she was subjected to sexual harassment. In June, 1994, Mahan first found urine on her car. Then, sometime thereafter, she found a pornographic magazine on her windshield and urine on the roof of her car. After this incident, she notified her immediate supervisor, James Watson. Pls.' Verification of Factual Submissions, Mahan Dep., Ex. A at 90–92. Watson told her that he would "take care of it." Mahan's car continued to be vandalized with urine and pornography. On at least one occasion, Mahan inquired into Watson's investigation of these incidents but obtained no information. Subsequently, she spoke with Edward McLaughlin, Superintendent of Special Operations and Watson's supervisor, and several other supervisory personnel.

Also, during this time, male co-workers made loud sucking and kissing sounds when Mahan would walk past them. She did not specifically report this conduct to her supervisors, as she believed that this conduct was common knowledge.

On or about January 23, 1995, Mahan was promoted to the Deputy Superintendent of Special Operations position. In her Verified Complaint she avers that "[a]t this time, she believed that as a result of her promotion, the harassment directed against her would stop." Verified Comp. ¶ 11. In her deposition testimony taken in December, 1997, Mahan stated that the car vandalism incidents ceased in the fall of 1994 and the kissing and sucking sounds ceased, at the latest, in March, 1995. In response to the Defendants' Motion for Summary Judgment, Mahan filed an affidavit along with the affidavit of two co-workers stating that her car continued to be vandalized up to December of 1995 and that the kissing and sucking sounds continue. The Commission argues that this Court should disregard these affidavits in deciding on its motion because the affidavits contradict Mahan's clear and unambiguous deposition testimony.

## DISCUSSION

Mahan's sexual harassment claims are based on the failure of the Commission to take adequate remedial action to address the sexual harassing conduct of fellow workers.

### A. Statute of Limitations.

The Commission avers that Mahan's sexual harassment claims under Chapter 151B and Title VII are time-barred. Under Chapter 151B, a person must file a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") "within six months after the alleged act of discrimination." Mass. Gen. Laws ch. 151B, § 5. Under Title VII, where a complaint initially has been filed with a state agency such as the MCAD, a charge must be filed within 300 days after the discrimination occurred. 42 U.S.C. § 2000e-5(e)(1). Mahan filed her MCAD complaint on March 8, 1996, and indicated that she wanted this complaint filed with the EEOC as well. Thus, for the alleged acts of sexual harassment to be the basis for her sexual harassment claims, such unlawful conduct must have occurred on or after September 8, 1995 (Chapter 151B), and on or after May 13, 1995 (Title VII) unless Mahan can show a continuing violation. The Commission asserts that based on Mahan's MCAD complaint, her Verified Complaint, and her deposition testimony, the car vandalism last occurred in the fall of 1994 and the kissing and sucking sounds ended in late March, 1995; therefore, such conduct cannot be a basis for her sexual harassment claim due to the statute of limitations.

### 1. Continuing Violation

In response, Mahan argues that her sexual harassment claims are not time-barred as the alleged unlawful conduct continued into the limitations period. Specifically, she claims, in a post-deposition affidavit filed with her memorandum in opposition to the Defendant's Motion for Summary Judgment, that in December, 1995, she and two co-workers

found Mahan's vehicle covered with urine and pornography. *See* Mahan Aff. ¶ 11. Additionally, she claims in her affidavit that the kissing and sucking sounds continue into the present. Mahan Aff. ¶ 15.

Under federal law, a continuing violation is characterized as either a serial violation or a systemic violation. A serial violation is "a violation composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII." *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990). A systemic violation is a violation deriving out of a discriminatory policy or practice and not a particular act; "so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint." *Id.* at 523. Here, Mahan's continuing violation argument is a serial violation argument. Her sexual harassment claim will not be time-barred under Title VII if she can show "that some discriminatory act transpired within the [limitations] period." *Mack v. Great Atlantic Pacific Tea Co.,* 871 F.2d 179, 183 (1st Cir.1989). Likewise, under Massachusetts law "the six month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature." 804 C.M.R. § 1.03(2). To this end, she offers her post-deposition affidavit and the post-deposition affidavits of her co-workers.

The Commission argues that these post-deposition affidavits should be excluded because they contradict unambiguous deposition testimony of Mahan. In support of this position, the Commission cites to a line of federal court decisions holding that a contradictory post-deposition affidavit that does not contain "newly discovered" evidence or clarify a contradiction or ambiguity in the deposition cannot be admitted after a lengthy deposition as a basis for establishing a genuine issue of material fact to defeat summary judgment. *See, e.g., S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495–95 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches without explanation, sworn testimony."); *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67–68 (7th Cir.1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy."); *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3rd Cir.1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists."); *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266–67 (9th Cir.1991); *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986); *Foster v. Arcata Assoc.,* 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Van T. Junkins & Assoc. v. U.S. Industries,* 736 F.2d 656, 657 (11th Cir.1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."); *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1366 (8th Cir.1983) ("only ... where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted"); *Perma v. Singer Co.,* 410 F.2d 572, 577–78 (2nd Cir.1969); *see also,* 10A Charles Alan Wright. Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726 (2d. Supp.1997)(citing cases). *See generally,* Jeffrey L. Freeman, J.D., *Propriety, Under Rule 56 of the Federal Rules of Civil Procedure, of Granting Summary Judgment When Deponent Contradicts in Affidavit Earlier Admission of Fact in Deposition,* 131 A.L.R. Fed. 403 (1996).

This Court summarily addressed this issue in *Lowery v. AIRCO, Inc.,* 725 F.Supp. 82, 85–86 (D.Mass.1989), stating that "[w]hen a party has given clear answers to unambiguous deposition questions, he or she cannot raise an issue of fact by submitting a subsequent affidavit that merely contradicts the

deposition testimony." There is, however, no conflict if the post-deposition affidavit clarifies ambiguities created by the deposition about material issues. *Id.* at 86. The Court did not discuss the parameters of this rule as the Court found no direct conflict between the deposition and the affidavit of a nonparty expert witness. *Id.* at 86. *See* R.K. Gad III, *The "O'Brien Rule" and Deposition Defense Practice, in Cutting Edge Federal Civil Litigation '96* (MCLE 1996) 1, 10–13.

■ Since this Court's decision in *Lowery,* the First Circuit has addressed this issue. In *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1 (1st Cir.1994), the First Circuit upheld a district court's grant of summary judgment for the defendants in a suit to recover damages for injuries sustained by the plaintiff as the result of a fall from a ladder while working at a construction site. The court concluded that the doctrine of assumption of risk applied barring the plaintiff's claims of negligence and products liability. In reaching this holding, the court considered the plaintiff's deposition testimony in which he acknowledged his awareness of the risk attending his particular use of the ladder at that time and his subsequent, contradictory affidavit in which he attested to having "no knowledge at the time of the accident of the ladder's propensity to slip." *Colantuoni,* 44 F.3d at 4. The court disregarded this contradictory affidavit because 1) the affidavit did not identify any confusion during the deposition; 2) the explanation for the contradiction was specious; 3) the plaintiff's "attorney was present at the deposition and had the opportunity to clarify any incorrect impressions;" and 4) "the affidavit was offered only after defendants had filed motions for summary judgment." *Colantuoni,* 44 F.3d at 5. In reaching this conclusion, the First Circuit adopted the following principle:

> When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly

contradictory, *but does not give a satisfactory explanation of why the testimony is changed.*

*Colantuoni,* 44 F.3d at 4–5 (citing 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2726 at 30–31 [2d ed. Supp.1994]) (emphasis added); *see also, Hackman,* 932 F.2d at 241; *Russell,* 51 F.3d at 67–68.

■ The purpose of this sham affidavit rule is to protect the procedural integrity of summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is a procedural device "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also, Babrocky v. Jewel Food Co.,* 773 F.2d 857, 861 (7th Cir.1985) (concluding that the objective of summary judgment is "to weed out unfounded claims, specious denials, and sham defenses"). If a party simply could offer a contradictory, post-deposition affidavit to defeat summary judgment without providing a "satisfactory explanation" for the contradiction, the purpose of summary judgment would be defeated. *Cf. Perma Research,* 410 F.2d at 578.

■ Here, in her deposition testimony dated December 12, 1997, Mahan testified to six occasions where urine was found on her car and four occasions where pornographic magazines were left on her windshield. *See* Fosket Aff., Mahan Dep., Ex. A at 111–12.[1]

---

1. The relevant deposition testimony is as follows:
   Q: And as you sit here today, you don't recall or you don't have knowledge of any other instances in which urine was left on your car?
   A: I know it happened, but I don't remember specific days.

   Q: What I'm trying to find out now is your complaint alleges six separate occasions?
   A: Yeah.
   Q: What's that allegation based on?
   A: There are six times that I had kept my own notes on things that had happened so I can

This conduct ceased in the fall of 1994. *See* Fosket Aff., Mahan Dep., Ex. A at 193–94; 197–98.[2] In contradiction, her affidavit, dated March 2, 1998, states that the incidents occurred up and until December, 1995. Mahan Aff. ¶¶ 6–11. She also claims that in October 1997, an employee found a pornographic magazine in one of the company car's assigned to her department and often driven by her. Mahan Aff. ¶ 11. Both of these statements contradict her deposition testimony. In this affidavit, she offers no explanation for the contradiction between this affidavit and her prior deposition. It is only in response to the Defendants' Reply Memorandum that Mahan offers any explanation for the contradictions. First, she avers that there is no contradiction. Instead, she argues that her affidavit clarifies or augments her ambiguous deposition testimony. The affidavit is not contradictory, Mahan argues, as the Commission did not pin down the testimony of Mahan regarding the last date

remember reading my own notes. When I went up to Eddie McLaughlin I knew how many had happened at that time. When I went up to Gerry Allen, I knew how many had happened at that time.

Q: Is it fair to say you have no knowledge today or any other than six occasions where urine was found on your car?

A: I can't say I have.

Q: Same question with respect to the four occasions on which you allege magazines were left on the windshield. As you sit here today do you have any knowledge of any other occasions where magazines were left on your car other than those four?

A: No. I work with people that were pretty decent. Ray Mitchell told me— maybe he found it a second time, a third time and didn't tell me. I don't know.

Q: I'm not asking that.

A: I don't know.

Q: I'm just asking whether you know from personal knowledge or somebody told you. So you don't have knowledge either from someone else or your own knowledge of any other occasions on which a magazine was found on your windshield?

A: That's correct.

Q: As you sit here today, you have no knowledge from someone else or from your own observation of any other than the six occasions on which urine was found on your car; is that correct?

A: I can only attest to that many times.

**2.** The relevant deposition testimony is as follows:

Q: Okay. And there were also six times when urine was left on your car, three times where there was also a magazine on your car, right?

A: Yes.

Q: So that's a total of seven incidents?

A: Right. Mm-hmm.

Q: That's all I'm trying to establish here. My question is by the time you had met with Ms. Handren in November of 1994 had all of those incidents already occurred?

A: I think so.

Q: At some point?

A: Yes, because I would have brought it up if it hadn't. I think I would say yesterday this happened, but it was already way back. Nobody did shit about it.

Q: Okay. So your recollection is by the time you met with Ms. Handren, it was already way back that the last one occurred?

A: Yeah. When I got called up to talk to her, when I went up there, I think I was waiting for an answer.

Q: You said, though, if I recall what you just said correctly, you said that by the time you met with her in November 1994 the incidents were already way back; what do you mean by that?

A: Months, months had gone by.

Q: Since the last one?

A: I don't know about that. Months had gone by the second time I told Watson, second time I told Eddie McLaughlin.

Q: I'm trying to connect the meeting with Ms. Handren as to the time when one of these incidents occurred. I'm trying to find out how long.

A: I can't recall. I can't recall.

Q: Do you recall that the incidents stopped at some point?

A: I know they didn't carry over to the first of the year.

Q: Did they carry into the end of the year, meaning 1994?

A: I think it continued to the fall.

Q: How far into the fall?

A: I can't recall.

Q: Continue into November?

A: I feel badly because I had written everything down as it occurred, but I can't recall.

Q: When you say you had written everything down as it occurred were those notes that you prepared at the time the events occurred?

A: Not at that time, but when I got to sit down and think about it and talk to somebody and told me what they found and what they seen. If I had time, I would have made a note about it.

Q: You don't recall making notes about it?

A: I, I do. I do recall giving Jimmy Watson a copy of a note.

\*   \*   \*   \*   \*   \*

Q: When you met with Ms. Handren in November, 1994, in your mind had the situation stopped, meaning these continued incidents of urine on your car and magazines?

A: Yes.

on which the car vandalism took place. Also, her inability to provide the specific last date shows confusion on her part. This Court disagrees.

As to Mahan's affidavit, the inquiry for this Court is whether her post-deposition affidavit contradicts her deposition testimony or whether the affidavit clarifies or augments the deposition. If the affidavit is contradictory, then a satisfactory explanation is required. Mahan's explanation is that she was confused about the time frames that she was responding to during her deposition. This Court finds this assertion unconvincing. Review of the relevant deposition testimony indicates that the time period at issue was the fall of 1994. Mahan's recollection of that time period was based on her recollection of a particular event, her meeting with Maureen Hanson,[3] the Manager of Labor Relations, in November, 1994. She offers no evidence to show that this event, her point of reference, took place on another date nor does she offer the notes she had taken regarding these incidents, and mentioned in her deposition, to establish that the vandalism of her car took place during the limitation period. Because Mahan fails to provide a satisfactory explanation for the contradiction between her deposition testimony and her subsequent Rule 56(e) affidavits, this Court disregards this portion of her affidavit in considering whether there is a triable issue regarding the statute of limitations. *Colantuoni*, 44 F.3d at 4.

---

**3.** Spelled "Handren" in the deposition.

**4.** The relevant deposition testimony is as follows:

Q: In any event, it's your best recollection that these incidents involving groups of men making loud sucking and kissing sounds occurred after you were promoted?

A: Yes.

Q: So that would be sometime after January, 1995?

A: Mm-hmm. Yes.

. . . . .

Q: Are you able to tell me how frequently this occurred?

A: No, but I can tell you it's more than ten times.

Q: Over what period of time?

A: I'd say probably two months. It wasn't a long duration.

Q: Are you able to tell me when it started?

A: It started when I first went upstairs.

Q: When was that?

In addition, in her deposition Mahan stated that the kissing and sucking sounds began when she was promoted on January 23, 1995, and continued for two months until later March, 1995. *See* Fosket Aff., Mahan Dep., 211; Ex. A. at 255.[4] Later, in her deposition, Mahan indicates that some of the sucking and kissing incidents took place before her promotion. Fosket Aff., Mahan Dep., Ex. B at 369–70. Thus, within her deposition, there is ambiguity about when the kissing and sucking conduct began, but there is no ambiguity about when it stopped. In her affidavit, she avers that such conduct, though less pervasive, continues. Mahan Aff. ¶ 15. For the same reasons discussed anent the car vandalism, this portion of the affidavit should not be admissible to establish a genuine issue of material fact.

Mahan argues that the Court must consider all of the affidavits in determining whether to grant summary judgment and issues of credibility are to be decided by the factfinder. This Court agrees that "a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition . . . as a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir.1980). Nonetheless, this principle does not negate the application of the sham affidavit rule in the summary judgment context.[5]

---

A: January 23rd of 1995.

Q: Okay. So this went on until approximately late March 1995.

A: Yeah.

**5.** Contrary to the assertions of Mahan, the Fifth Circuit did not reject the sham affidavit rule in *Kennett–Murray*. Instead, the court concluded that since the post-deposition affidavit was generally consistent with deposition testimony and clarified ambiguous or confusing parts of the deposition, the sham affidavit rule was inapposite to the case. *Kennett–Murray*, 622 F.2d at 894 ("In light of the fact that the affidavit is generally consistent with the position forwarded in the deposition, the concerns raised in *Perma Research* and *Radobenko* are not present in this case. Accordingly, *we do not decide* whether the principles enunciated in those cases should be adopted by this court."). Moreover, in subsequent opinions, the Fifth Circuit has adopted this

In her deposition, Mahan makes clear, unequivocal declaratory statements regarding when the kissing and sucking sounds and the car vandalism ended, she cannot now offer her own contradictory affidavit to create a genuine issue of material fact as to when the sexual harassment conduct ceased in order to defeat summary judgment without providing a satisfactory explanation for the contradiction. The purpose of summary judgment is to test the sufficiency of the nonmoving party's evidence. To permit a nonmoving party to create a factual issue by filing a contradictory, post-deposition affidavit would defeat this purpose.

## B. Contradictory Affidavit of a Nonparty.

In addition to her own affidavit, Mahan offers the post-deposition affidavits of two co-workers: Raymond Mitchell ("Mitchell") and Daniel P. Devlin ("Devlin"). Each affiant avers that on several occasions he found Mahan's car vandalized with urine or pornography, including two or three occasions in 1994 and 1995 when he found the words "Fucking Pig" or "Fucking Whore" or words to that effect written in dust on her car. Mitchell informed Mahan of this particular incident at least once and of the other vandalism. Devlin states that he always informed Mahan of any car vandalism that he witnessed. Both Mitchell and Devlin state that the last time either person witnessed any car vandalism was in November or December, 1995. These statements directly contradict Mahan's deposition testimony regarding when the car vandalism ceased. Because of this contradiction, the fact that she had knowledge of this information at the time of the deposition, and the lack of ambiguity on this point in the deposition, the Commission argues that these contradictory affidavits should not be able to defeat summary judgment as to the sexual harassment claims.

█ Few courts have addressed the issue of whether a contradictory, post-deposition

affidavit of a non-party who has not been deposed may be used to establish a genuine issue of material fact to defeat summary judgment.[6] The Commission refers to several cases in support of their argument. These courts have extended the principle that a post-deposition affidavit of a party or non-party which contradicts the person's prior deposition testimony to the post-deposition affidavit of a nonparty that contradicts prior deposition testimony of a party. *See Prosser v. Ross,* 70 F.3d 1005, 1008 (8th Cir.1995); *Lugo v. Milford Management Corp.,* 956 F.Supp. 1120, 1129 n. 7 (S.D.N.Y.1997); *Phinney v. Morgan,* 39 Mass.App.Ct. 202, 207, 654 N.E.2d 77 (1995), *rev. denied* 421 Mass. 1104, 656 N.E.2d 1258 (1995) ("The plaintiff's affidavits *and* that of their expert cannot be used to contradict previous statements made by the plaintiff under oath in order to create a material issue of fact to defeat summary judgment.") (emphasis added). None of these decisions gives substantive reasoning for the extension of the sham affidavit rule. The Commission identifies no First Circuit authority extending the sham affidavit rule to post-deposition affidavits of non-deposed, non-party affiants.

█ The Court recognizes that the principles underlying the sham affidavit rule may be relevant to determining if a nonparty's affidavit that contradicts a party's deposition testimony should be considered at summary judgment. Nevertheless, the Court is hesitant to extend the sham affidavit rule to this context. The role of a judge at summary judgment is to determine if there are triable issue(s) of material fact(s) by considering whether a reasonable jury could find for the nonmoving party based on the admissible evidence. The judge is not to invade the province of the trier of fact by making credibility determinations or weighing the evidence. Though the integrity of summary judgment would be impaired if a nonmoving party could defeat summary judgment by offering a party or nonparty affidavit that

rule. *See, e.g., S.W.S. Erectors,* 72 F.3d at 496–97.

**6.** Some courts, including this Court, have held that a party cannot defeat summary judgment by using a post-deposition affidavit of a non-party to contradict unambiguous deposition testimony of

the same previously deposed non-party. *Lowery v. AIRCO, Inc.,* 725 F.Supp. 82 (D.Mass.1989); *Adelman–Tremblay v. Jewel Cos., Inc.,* 859 F.2d 517 (7th Cir.1988); *Garnac Grain Co., Inc. v. Blackley,* 932 F.2d 1563, 1568 (8th Cir.1991).

contradicts, without satisfactory explanation, prior deposition testimony, this Court also believes that the integrity of summary judgment process would be defeated if the Court encroached upon the role of the trier of fact and turned summary judgment into trial on the merits. A disinterested witness's affidavit signed under the pains and penalties of perjury should be taken as truthful at summary judgment. *Cf. Lane v. Celotex Corp.*, 782 F.2d 1526, 1530 (11th Cir.1986) (indicating a reluctance to extend the sham affidavit rule to a disinterested witness's contradictory post-deposition affidavit). The affidavits of Miller and Devlin raise a genuine issue of material fact as to whether the discriminatory conduct that is the basis of her sexual harassment claim occurred during the limitation's period. For these reasons, this Court denied summary judgment as to Count I and IV of Mahan's Complaint.

SO ORDERED.