Luis A. LUGO, Plaintiffs,

v.

MILFORD MANAGEMENT
CORP., Defendant.

No. 95 Civ. 8853 (CBM).

United States District Court,
S.D. New York.

Feb. 18, 1997.

See also 1996 WL 208190.

James W. Badie, Elmsford, NY, for Luis A. Lugo.

Richard H. Block, Winthrop, Stimson, Putnam & Roberts, New York City, for Milford Management Corp.

### OPINION

MOTLEY, District Judge.

## I. PROCEDURAL HISTORY AND BACKGROUND

This action arises out of a claim brought by plaintiff, Luis A, Lugo, against defendant, Milford Management Corp., for wrongful termination of employment and false imprisonment. Defendant is a New York Corporation that is the managing agent of commercial and residential real estate in New York City. It is a member of the Realty Advisory Board ("RAB") and is a party to a collective bargaining agreement ("CBA") with Local 32B–J ("Union"). Plaintiff is a New Jersey resident who was employed by the defendant for 23 years as a security guard at One Lincoln Plaza, New York, New York, which is a residential building managed by defendant. Lugo enjoyed CBA benefits as an employee of defendant.

According to defendant's rules of employment, employees may not consume alcohol while on the job. On March 4, 1994, plaintiff was fired for violating this rule, i.e., for "misconduct." Following his discharge and as provided in the CBA, Lugo filed a grievance and asked the Union to help him get his job back. On April 12, 1994, the Union filed a demand for arbitration of plaintiff's discharge. On April 30, 1996, plaintiff withdrew the demand for arbitration without prejudice.

Upon his termination, Lugo also applied for unemployment insurance benefits and represented to the Unemployment Insurance Reviewing Examiner that he was taking medication and had not consumed alcohol on the day he was fired. The Examiner determined that plaintiff was entitled to benefits. Defendant objected and requested a full hearing before an administrative law judge. The hearing was held May 26, 1994 and June 17, 1994, and plaintiff (who was not represented by counsel) testified under oath at that hearing that (1) he had purchased and drank a bottle of vodka on his lunch break the day he was fired, and (2) he had not been taking medication that day. Furthermore, defendant's District Manager, Stephen Rossi, testified that Lugo had a history of working under the influence of alcohol and had received numerous warnings and suspensions prior to his termination. The ALJ, accordingly, denied plaintiff's claim for benefits and concluded that plaintiff had been fired because of misconduct.

On August 4, 1994, plaintiff filed a verified complaint with the New York State Division of Human Rights ("Division") charging Milford with the unlawful discriminatory practice of firing plaintiff because of his disability, i.e. alcoholism. Plaintiff elected not to pursue his claim with the Division. On July 19, 1996, Lugo requested and received a "right to sue" letter in federal court. On October 17, 1995, plaintiff filed a complaint in this court based on diversity and federal question jurisdiction alleging that defendant discriminated against him on the basis of his alleged disability in violation of Title VII of the Civil Rights Act of 1964 and the Federal Rehabilitation Act of 1973. Plaintiff invoked the court's supplemental jurisdiction to hear his Human Rights Law claim which also prohibited discrimination based on disability and his common law right to privacy claim. Plaintiff acknowledged that he had testified under oath that he had drank vodka on the day he was fired, but he claimed that he did not mean what he said during the hearing.

Defendant filed a 12(b)(6) motion to dismiss. Later in plaintiff's opposition papers to defendant's motion, plaintiff restated his right to privacy claim as a false imprisonment claim.

On April 25, 1996, at oral arguments, plaintiff voluntarily withdrew his Title VII claims. From the bench, this court summarily dismissed plaintiff's Federal Rehabilitation Act claim due to plaintiff's failure to plead that defendant received federal financial assistance, an essential element under that Act which prohibits any program receiving federal financial assistance from discriminating against an otherwise qualified disabled individual. In the written opinion that followed, the court dismissed plaintiff's supplemental state law claims for lack of subject matter jurisdiction, held that New York had no common law of privacy and noted that plaintiff's Human Rights Law, right to privacy, and false imprisonment claims were extremely muddled. The court granted plaintiff leave to replead his complaint within twenty days.

On May 13, 1996, plaintiff filed an amended complaint, thereby commencing the action now before the court. In his amended complaint, plaintiff invokes this court's diversity jurisdiction over his claims of wrongful discharge and false imprisonment. On June 17, 1996, defendant moved to dismiss plaintiff's amended complaint or, in the alternative, for summary judgment, pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. This court hereby grants defendant's motions and dismisses plaintiff's complaint.

## II. FACTS

Plaintiff alleges that up until his termination, he was a diligent and hard working security guard at defendant's building. Lugo concedes that in the past he had an alcohol dependency problem but had entered rehabilitation and was now fully recovered. Lugo claims that on March as a result. Lugo claims that he was suffering from his past alcohol dependency/disability on March 4, 1994 but denies that he drank alcohol during his lunch or working hours. He claims that his discharge was without cause or justification. Lugo also alleges that when the defendant, through its agent, Stephen Rossi, falsely accused and fired him, Rossi ordered him not to leave the premises and subjected him to a breath test and a personal search in front of his wife, Francis Lugo. Lugo claims that he was fired unjustly and falsely imprisoned by Rossi and seeks punitive and compensatory damages for the humiliation and pain he has suffered.

## III. Defendant's Motion to Dismiss

A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when plaintiff can "prove no set of facts in support of his claim that would entitle him to relief" *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Philippeaux v. North Central Bronx Hosp.*, 871 F.Supp. 640, 645 (S.D.N.Y.1994). Defendant moves to dismiss plaintiff's wrongful discharge and false imprisonment actions. Defendant argues that plaintiff is not entitled to relief under his false imprisonment action because it is time barred by the statute of limitations. In reply, plaintiff asserts that the statute of limitation was tolled because he originally filed his claim with the Division and was prohibited from bringing his claim in federal court until he received a right to sue notice.

Defendant also argues that plaintiff is not entitled to relief under his wrongful discharge action because plaintiff's state law claim is preempted by § 301(a) of the LMRA[1] and must be adjudicated through the grievance procedures provided in the CBA. In addition, defendant argues that New York does not recognize a right against unjust discharge and that this alone should be reason enough to dismiss plaintiff's claim. Defendant maintains that since plaintiff's claim is not grounded in state law it must arise, if at all, from the CBA, thereby, providing additional reason for preemption and

---

**1.** 301(a) reads in relevant part; "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 301(a).

dismissal due to plaintiff's failure to exhaust the grievance procedure.

Defendant points to the following sections of the CBA to support its argument:

Any grievance, except as otherwise provided herein ... shall be presented to the RAB in writing within 120 days of its occurrence, except for grievances involving ... discharge which shall be presented within 45 days.

There shall be a Joint Industry Grievance Committee and grievance procedure ... to try to decide all issues not covered by, and not inconsistent with, any provision of this agreement and which are not required to be arbitrated under its terms.

If any employee is unjustly discharged, he shall be reinstated without loss of seniority or rank and without deduction. The Joint Industry Grievance Committee or the Arbitrator may determine, whether, and to what extent, the employee shall be compensated by the Employer for time lost. A Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement, and such other issues as are expressly required to be arbitrated before him ...

The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved. Nothing herein shall be construed to forbid either party from resorting to court for relief from, or to enforce rights under, any award.

In reply, plaintiff relies heavily on a letter written to him by Mr. James F. Fitzpatrick, the Contract Director, which asserted, among other things, that plaintiff was a member of the Union who enjoyed the benefits of the CBA but was not a party to the agreement between the RAB and the Union and therefore, was not bound by its terms

nor prevented from commencing this lawsuit. Citing the "Fitzpatrick letter," plaintiff postulates that even if he is deemed to be a party to the CBA, he has an independent and personal right against wrongful discharge arising out of state law which is not preempted by the LMRA. Furthermore, plaintiff maintains that since the CBA vested the Union with the sole power and discretion to advance claims to arbitration and the Union often refused to advance its members' claims, the CBA cannot be read to prohibit plaintiff (and other Union members) from seeking alternative relief in court for violation of his independent statutory right against discharge without just cause.

For the reasons set forth herein, this court grants defendant's motion to dismiss. The court will discuss plaintiff's false imprisonment claim first and then his wrongful discharge claim.

### A. False Imprisonment

■ New York has codified the limitations of actions and when these limitations may be tolled. N.Y.Civ.Prac.Law §§ 201–218 (McKinney 1972). Section 215 establishes that an action to recover damages for false imprisonment must be brought within one year of the injury. The general rule is clear, "an action ... must be commenced within the time specified in this article ... no court shall extend the time limited by law for the commencement of an action." § 201; *see also Jastrzebski v. City of New York*, 423 F.Supp. 669 (S.D.N.Y.1976) ("the legislature has made explicit its opposition to judicial tampering with the statutes of limitations as enacted."); *Board of Regents of the University of the State of New York et al. v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

■ In this action, plaintiff alleges that he was falsely imprisoned by defendant's supervisor on March 4, 1994, the day he was fired. Plaintiff filed his amended complaint on May 13, 1996, fourteen months after the statute of limitations had expired. Fed.R.Civ.P. Rule 15(c)(2)[2] permits plaintiff's claim to relate

---

**2.** Rule 15(c)(2) reads, "an amendment of a plead-

ing relates back to the date of the original plead-

back to the filing of the original complaint on October 17, 1995, which is still seven months beyond the time permitted under the statute. Therefore, defendant moves the court to dismiss plaintiff's claim for lack of timeliness.

This court grants defendant's motion and rejects plaintiff's argument that his action is not time-barred because § 215 was tolled. Citing no legal authority whatsoever, plaintiff asserts that the statute of limitations was tolled until he received his Notice of Right to Sue from the Division, where he first filed his complaint. New York courts have ruled that Executive Law § 297 prohibits a plaintiff that has filed a discrimination claim with the Division from bringing the *same* discrimination claim to the courts until the conclusion of the Division proceeding. *Matter of Pan American World Airways, et al. v. New York Human Rights Appeal Board,* 61 N.Y.2d 542, 548, 475 N.Y.S.2d 256, 463 N.E.2d 597 (1984) ("297 ... provides a stay by prohibiting the commencement of suit when a complaint has been filed with the Division. Thus, upon the filing of such a complaint and during its pendency, the Statute of Limitations is tolled until the administrative proceeding is terminated."); *Serravillo v. New York City Tr. Auth.,* 51 A.D.2d 1027, 381 N.Y.S.2d 308, affd. 42 N.Y.2d 918, 397 N.Y.S.2d 1006, 366 N.E.2d 1360 (1977).

In examining New York's tolling statute, the Supreme Court stated in *Board of Regents,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440, that "no section of the law provides, however, that the time for filing a cause of action is tolled during the period in which a litigant pursues a related, but *independent* cause of action." *Id.* at 486, 100 S.Ct. at 1796. A plaintiff is free to pursue an independent cause of action in federal court while another is pending in state court, and actually takes a risk if he litigates them in succession as opposed to concurrently. *Id.;* see also, *Matter of ISCA Enterprises v. City of New York,* 77 N.Y.2d 688, 569 N.Y.S.2d 927, 572 N.E.2d 610 (1991). Given the law on this issue, plaintiff's argument fails since his false imprisonment claim is independent of the discrimination claim first filed in the

Division. He was free to bring his action in this court long before he did. Since the statute of limitation was not tolled, plaintiff's claim is dismissed as time-barred by the statute.

## B. Labor Management Relations Act (LMRA)

The Supreme Court has interpreted Congress' conferring of broad powers upon the National Labor Relations Board ("NLRB") to interpret and to enforce the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA") as implying that "potentially conflicting" "rules of law, of remedy, and of administration cannot be permitted to operate." see, *Vaca v. Sipes,* 386 U.S. 171, 178–79, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967) (quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). Therefore, as a general rule, the Supreme Court has held that "neither state nor federal courts have jurisdiction over suits directly involving activity which is arguably subject to § 7 or § 8 of the [NLRA] Act." *Id.* Courts have not, however, interpreted this to mean that Congress intended the NLRB to hold exclusive jurisdiction over such actions. For example, Congress, itself has carved out exceptions, such as § 301(a) of LMRA which permits the federal district court to hear disputes over breach of a CBA, although such a breach may also constitute an unfair labor practice within the jurisdiction of the Board. *See, Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

With regards to § 301(a), the Supreme Court has held that the dimensions and subject matter of the Act mandate a resort to federal labor law in order to ensure a uniform and consistent interpretation of collective bargaining agreements and federal labor law policy. This principle has become known as the pre-emption doctrine or the *Garmon* rule. *Garmon* specifically states;

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the

ing when ... the claim or defense asserted in the amended pleading arose out of the conduct ...

set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. Rule 15(c)(2).

[NLRB], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. 359 U.S. at 244, 79 S.Ct. at 779.

■■■ The Court has ruled, however, that not all state law claims are pre-empted by § 301. State law claims that are beyond the "mere peripheral concern of the Labor Management Relations Act," *Vaca*, 386 U.S. at 180, 87 S.Ct. at 911, and are "substantially dependent upon analysis of the terms of a collective-bargaining agreement ... must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *See, Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Lingle v. Norge Division Magic Chef*, 486 U.S. 399, 405, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). States are not however precluded from providing employees with rights independent of the collective bargaining relationship. Only those state law suits arising out of allegations of breach of contract or of liability in tort are pre-empted if they are inextricable intertwined with the CBA and require the court to interpret the terms or legal consequences of a breach of the agreement. *Allis*, 471 U.S. at 209, 105 S.Ct. at 1910; *Dougherty v. American Telephone and Telegraph Company*, 902 F.2d 201, 203 (2d Cir.1990).

■■■ This court now turns to plaintiff's first cause of action alleging violation of his state law right against termination without cause. Plaintiff firmly maintains that his right is grounded in state law; thereby, precluding § 301(a) pre-emption. However, it is well established law in New York that absent an express agreement, an employment relationship is presumed to be a hiring at will, terminable by either party at any time for any reason or for no reason. *See, Martin v. New York Life Ins. Co.*, 148 N.Y. 117, 121, 42 N.E. 416, (1895).

Hence, there is no right against wrongful discharge unless a plaintiff explicitly pleads and establishes that an employer was limited by express agreement. *See, Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987) (plaintiffs alleging wrongful discharge have not fared well due to explicit and difficult requirement of express agreement pleading); *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 470 N.Y.S.2d 599 (1984) (claim dismissed because the language relied on was not sufficient to establish an express agreement); *Rizzo v. International Brotherhood of Teamsters*, 109 A.D.2d 639, 486 N.Y.S.2d 220 (1985) (claim dismissed because employee failed to establish detrimental reliance on job security). In this case, plaintiff makes no factual allegation of an express agreement between himself and defendant which limited defendant's right to terminate plaintiff without cause. Plaintiff relies on state law to establish this substantive right. Because New York does not recognize such a right absent a pleading of an express agreement, this court dismisses plaintiff's action for discharge without cause due to plaintiff's deficient pleading.

■■■ Furthermore, this court notes that even if plaintiff's right against termination was held to arise from the CBA, the state claim would be pre-empted by § 301(a) since it requires the court to interpret the CBA to ascertain whether there had been a breach of the agreement, and would be dismissed for plaintiff's failure to exhaust the grievance procedure provided in the CBA.[3]

---

**3.** As a preliminary matter, plaintiff's argument that he is not a party to the collective bargaining agreement and that he should not be bound by the terms of the agreement because the Union has the discretion to reject his claim, is to no avail. In *Hines*, the court held that § 301 "contemplates suits *by and against* individual employees as well as between unions and employers ... [and] encompasses those seeking to vindicate uniquely personal rights of employees such as ... wrongful discharge." 424 U.S. at 562, 96 S.Ct. at 1055 (emphasis added); *See also, Smith,* 371 U.S. at 199, 83 S.Ct. at 269–70. Moreover, the plaintiff's interests are protected by the imposition of a duty of fair representation on the collective bargaining agent. *Hines*, 424 U.S. at 564, 96 S.Ct. at 1056. Therefore, the Supreme Court has held that "there can be no doubt that the employee must afford the union an opportunity to act on his behalf," *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d

The court notes further that in plaintiff's original complaint, Lugo raised, as his first cause of action, defendant's violation of § 296 of the Executive Law of New York[4], a claim which this court dismissed for want of jurisdiction and for muddled pleadings. Lugo was granted twenty days to replead. By letter, plaintiff requested and was granted leave to submit an amended complaint. In his amended complaint, whether intentional or unintentional, plaintiff does not cite the Human Rights Law as a basis of his wrongful discharge claim, as he did in his first complaint. Plaintiff's first citing of the statute as a basis for sustaining his claim was in his opposition papers to defendant's instant motion to dismiss.

Despite this obvious idiosyncrasy, this court is bound by the liberal pleading Rules of Federal Civil Procedure and finds that plaintiff has made out an additional claim under the Human Rights Law. Because this is a diversity action, procedural matters are governed by the Federal Rules of Civil Procedure. Rule 8(e)(1) requires courts to construe plaintiff's pleadings liberally "as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197, 201, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938); *Federal Trade Commission v. Con-*

solidated Foods Corporation, 396 F.Supp. 1344, 1348 (S.D.N.Y.1974). All that is required is that defendant be on notice of the claim being asserted against him which is known as 'notice pleading.' *Id.; Conley* 355 U.S. at 48, 78 S.Ct. at 103 ("all pleadings shall be so construed as to do substantial justice.")

New York courts have held that a plaintiff pleads a claim of discrimination under the Human Rights Law if he alleges that he suffers from a disability and the disability caused the behavior for which he was terminated. *See, McEniry v. Landi*, 84 N.Y.2d 554, 557, 620 N.Y.S.2d 328, 644 N.E.2d 1019 (1994). Alcohol dependency has been held to qualify as a disability within the meaning of the Human Rights Law. *Id.* at 558, 620 N.Y.S.2d 328, 644 N.E.2d 1019. In this case, plaintiff alleges that he suffered from the disability of alcoholism, was rehabilitated but had a relapse on the day of his termination (when he drank a bottle of vodka after work hours) and was fired when his employer found him on the building premises, approximately 20–30 minutes after his shift was over. Given the liberal pleadings rule, the court finds that plaintiff has made out a Human Rights Law claim sufficient to withstand defendant's motion to dismiss.[5]

580 (1965). Lastly, if plaintiff's action is deemed to be pre-empted by § 301, which entities him to litigate in federal court, plaintiff must exhaust the grievance procedures provided in the CBA before his claim can be heard by this court, due to the strong policy in federal labor law favoring arbitration. "Courts are not to usurp those functions which collective-bargaining contracts have properly entrusted to the arbitration tribunal," the parties must first exhaust these procedures before bringing a lawsuit. *Id.* at 562–563, 96 S.Ct. at 1055; *Dougherty v. American Telephone and Telegraph Company*, 902 F.2d 201 (2d Cir. 1990). In this case, the CBA allows the parties to resort to court, 'for relief from, or to enforce rights under, any [arbitration] award.' Nothing in the contract permits Lugo to proceed directly to court without having gone through arbitration and received an arbitration award. The arbitration award is what parties can seek relief from, not arbitration or the grievance procedure. Lugo withdrew his claim after the Union had submitted an arbitration demand and then commenced this lawsuit in federal court without having first received an arbitration award.

4. Section 296(1) of the Executive Law provides, in relevant part:

It shall be an unlawful discriminatory practice: (a) For an employer ..., because of the ... disability ... of any individual, to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec.Law § 296(1)(a) (McKinney 1982) ("Human Rights Law").

5. Plaintiff's Human Rights Law claim also survives defendant's motion to dismiss pursuant to the pre-emption doctrine of the LMRA because neither of the elements of the state law claim require the court to interpret any term of the CBA. *Allis*, 471 U.S. at 212, 105 S.Ct. at 1911–12. Although Lugo's state law claim would requite the court to analyze the same set of facts that would be considered in an action brought pursuant to the just cause provision of the CBA, the Supreme Court has held, "§ 301 does not pre-empt state anti-discrimination laws ... even if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim is 'independent' of the agreement for

Plaintiff does not, however, fair as well with defendant's motion for summary judgment, which this court hereby grants.

## IV. Defendant's Motion for Summary Judgment

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Where, as in this case, the non moving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the non moving party must provide enough evidence to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. All of the facts must be read in the most favorable manner for the non moving party. *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 721 (2d Cir.1994).

At that point, the court must determine whether the evidence presents a "genuine factual issue that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party." 477 U.S. at 250, 106 S.Ct. at 2511. The court may grant summary judgment only when "no rational jury could find in favor of the nonmoving party." *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994). The Supreme Court has explained that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ...

and we think it should be interpreted in a way that allows it to accomplish its purpose." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553; *see, Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (if the evidence submitted by the party opposing summary judgment is merely colorable ... or is not significantly probative ... summary judgment must be granted.).

▬▬▬ In this case, defendant makes a motion for summary judgment of plaintiff's Human Rights Law claim on the grounds that plaintiff has failed to provide evidence to support his claim and to establish a genuine issue warranting trial. In order for a plaintiff to prevail under the Human Rights Law, a plaintiff must establish a prima facie case of illegal discrimination. The burden of proof then shifts to the employer who must show that the disability prevented the employee from performing his job in a reasonable manner or that the employee's termination was motivated by a legitimate nondiscriminatory purpose. *See, Matter of Miller v. Ravitch*, 60 N.Y.2d 527, 532, 470 N.Y.S.2d 558, 458 N.E.2d 1235 (1983); *Matter of Maloff v. City Comm. on Human Rights*, 46 N.Y.2d 908, 414 N.Y.S.2d 901, 387 N.E.2d 1217 (1979). The burden of proof then shifts back to the plaintiff who must establish that the reason provided by defendant for its actions was a "pre-text for discrimination." *O'Keefe v. Niagara Mohawk Power Corp.*, 714 F.Supp. 622 (N.D.N.Y.1989) (defendant's reason for its action held to be a pre-text of discrimination based on alcohol disability.).

▬▬▬ In applying the summary judgment standard, this court finds that plaintiff has failed to meet his initial burden of establishing a prima facie case of discrimination under the Human Rights Law. The courts have ruled that a plaintiff could meet his burden of establishing a prima facie case by coming forth with evidence creating an inference of discrimination by defendants. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982) ("The elements of a successful employment discrim-

§ 301 pre-emption purposes." *Lingle*, 486 U.S. at 409–10, 412, 108 S.Ct. at 1883, 1885. The court further held that such claims are not pre-

empted despite the fact that the state court must determine whether just cause existed to justify the termination. *Id.*

ination claim [under New York and federal law] are virtually identical."); *Watts v. New York City Transit Auth.*, 213 A.D.2d 253, 254, 624 N.Y.S.2d 124 (1st Dep't 1995) (evaluating sex discrimination claim under Human Rights Law by looking to federal standards); *de la Cruz v. New York City Human Resources Dept.*, 884 F.Supp. 112 (S.D.N.Y. 1995) (Motley, J.) ("Plaintiff must prove a prima facie case of illegal discrimination by a preponderance of the evidence."); *Russo v. Trifari Krussman & Fishel, Inc.* 837 F.2d 40, 43 (2d Cir.1988); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992).

However, plaintiff may not rely on 'the mere pleadings themselves,' Fed.R.Civ.P. Rule 56(e). Rule 56(e) requires "the nonmoving party to go beyond the pleadings and by [his] own affidavits, ... designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (1986); *Anderson*, 477 U.S. at 257–58, 106 S.Ct. at 2514–15 (plaintiff may not rely on mere speculative allegations but must set forth affirmative evidence of the existence of a genuine issue warranting trial). In the present case, plaintiff submits no evidence, beyond the allegations in his complaint, from which a reasonable inference can be drawn that there was a discriminatory animus on the part of the defendant in firing plaintiff.

■ Despite plaintiff's failure, defendant, in its motion papers, satisfies his burden by arguing and establishing that its decision to terminate Lugo was based on nondiscriminatory and legitimate reasons, primarily Lugo's violation of company policy. Defendant argues that Lugo was fired for misconduct because, at the time of his discharge, Lugo violated the company policy of being under the influence of alcohol while on the job. Defendant contends that being 'on the job' while under the influence of alcohol is not limited to Lugo's actual shift time but includes being on the employer's premises under the influence. Defendant reasons that as a security guard, Lugo's violation of company policy jeopardized the security of the building and would have damaged its reputation and relationship with its tenants had any of them seen Lugo on the job while inebriated. Defendant contends that Lugo's termination had nothing to do with his disability and, as defendant rightly notes, plaintiff has offered no evidence on this motion establishing that it fired Lugo for any reason other than his violation of a company policy.

Moreover, this court finds that plaintiff has not even submitted evidence establishing that defendant knew plaintiff was suffering from a disability. The only evidence submitted, from which an inference of defendant's knowledge of plaintiff's disability could possibly be drawn, is the partial transcript of Lugo's hearing before the ALJ, submitted by defendant in support of its motion to dismiss. However, plaintiff has brought to the court's attention that the New York Unemployment Insurance Appeal Board has rescinded the ALJ's decision denying Lugo's request for unemployment insurance benefits and sustaining his termination due to 'misconduct,' and has ordered a new hearing before the ALJ.[6] This court agrees with the finding of the Appeal Board in that the parties were denied certain procedural due process rights since the transcript of the hearing was incomplete. Therefore, in reaching its decision, this court has excluded the partial transcript of the hearing and the ALJ's decision from the record.[7]

6. In opposition to defendant's motion, plaintiff submitted a copy of the Decision of the New York Insurance Appeal Board, dated September 18, 1996, rescinding the decision of the ALJ and ordering a new hearing before the ALJ. The Appeal Board rescinded on the grounds that a decision should not have been issued because the parties were not accorded certain procedural due process rights to the claimant's detriment The Appeal Board noted that side two of the transcript tape of the hearing was blank, therefore, the direct testimony of the claimant (Lugo) was interrupted, there was not cross-examination of the claimant by the employer, and then were

no closing starts of the parties. To date, this court has not received a copy of the new decision or any further correspondence on this matter.

7. Even if this court were to include the transcript in the record to establish that the defendant knew of plaintiff's disability and to create an inference of discrimination, the plaintiff's claim would still not survive defendant's summary judgment motion. In this same transcript, Lugo admitted to drinking during his lunch break and ruling to work, in clear violation of defendant's policy. Defendant is correct in noting that plaintiff cannot submit his affidavit or the affidavit of

Having done so and having reviewed the record in a light most favorable to the plaintiff, this court finds that plaintiff has failed to make out a prima facie case of illegal discrimination, firing because of a known disability, under the Human Rights Law or at least, to come forth with evidence which is adequate to raise a reasonable inference of discrimination. In addition, since plaintiff has failed to establish defendant's discrimination, based upon a known disability, an essential element of his claim, the court rejects his attempt to make a material issue out of 'when' he drank the vodka and was terminated as opposed to the fact that he drank and returned to his place of employment. The Supreme Court has ruled that;

> Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... in such a situation, *there can be no genuine issues as to any material fact,* since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex,* 477 U.S. at 322–25, 106 S.Ct. at 2552–54.

As a final matter, this court notes that plaintiff's reliance on *McEniry,* 84 N.Y.2d 554, 620 N.Y.S.2d 328, 644 N.E.2d 1019 (1994), to oppose defendant's summary judgment motion is to no avail, since the facts and record of this case are not sufficiently similar to those in *McEniry* to warrant a ruling in plaintiff's favor. Plaintiff relies on *McEniry* to support its argument that the reasons provided by defendant for his termination are a pre-text for its discrimination against him based on his former alcohol dependency problems. In *McEniry,* McEniry worked for the Department of Environmental Facilities ("DEF") and began having attendance and lateness problems in 1989 due to his alcohol problems. In 1990, McEniry sought assistance from the Westchester County Employee Assistance Program ("EAP") and was admitted into a 28–day inpatient detoxification program. At EAP's request, DEF granted McEniry leave of absence to receive treatment. While participating in the rehabilitation program, McEniry was charged with 47 violations of misconduct relating to absenteeism. *Id.* After McEniry was discharged from the rehabilitation program, he returned to work. His work was later rated by DEF as satisfactory.

Nevertheless, at a hearing conducted pursuant to Civil Service Law, the hearing officer determined that McEniry was guilty of misconduct and recommended a 60 day suspension. Thereafter, DEF adopted the findings of the hearing officer and terminated McEniry instead of suspending him. McEniry brought an Article 78 proceeding seeking to annul defendant's decision. The Appellate Division dismissed the proceeding and McEniry appealed. The New York Court of Appeals reversed the decision and found that plaintiff established that defendant's had indeed relied on McEniry's past alcohol dependency as a basis of its decision to fire him because the record indicated that plaintiff had been performing his duties satisfactorily for at least three months after he completed the rehabilitation program.

The court held that DEF could not rely on plaintiff's pre-rehabilitation absences as a basis of establishing 'misconduct' or for firing McEniry, since McEniry was completely rehabilitated and had been performing the job satisfactorily for three months. The evidence in the record had established that DEF had given plaintiff a leave of absence to attend the rehabilitation program, that plaintiff had completed the rehabilitation program, had returned to work, and had received a satisfactory/above average job per-

---

Abraham Hardon contradicting his prior sworn testimony, in an effort to create a material issue warranting trial. *See, Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 572 (2d Cir.1991) ("the rule is well-settled in this circuit that a patty may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his prior sworn testimony."); *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969) ("if a party ... could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact").

formance evaluation by DEF. The court found that the reason ('misconduct') given by defendant did not establish a non-discriminatory and legitimate purpose for its termination of plaintiff and was, therefore, a pretext for discrimination.

In the case now before the court, the record is not as rich. There is no evidence that plaintiff was in fact rehabilitated, that his alleged 'post-rehabilitation' job performance was satisfactory, that defendant knew plaintiff was a rehabilitated alcoholic or that plaintiff was being punished for pre-rehabilitation conduct. As a matter of fact, in his reply papers and by affidavits, plaintiff admits to having drank a bottle of vodka *on the day he was fired,* shortly before his supervisor found him in the storage room of the building. Moreover, the court in *McEniry* acknowledged the limitations of its own ruling:

> ... our holding is not intended to create a safe haven for individuals who resort to recovery programs as a pretext for avoiding otherwise legitimate disciplinary action, nor do we imply that in every case where an alcoholic is purportedly rehabilitated all disciplinary action is prohibited ... thus, in the appropriate case, an alcoholic who is found not to be actually rehabilitated, or who is shown to have an established propensity *to relapse* may be found unable to perform the job in a reasonable manner.

*Id.* at 560, 620 N.Y.S.2d 328, 644 N.E.2d 1019. Therefore, it is clear that plaintiff, in this case, cannot rely on *McEniry* to survive defendant's summary judgment motion. Defendant's motions are granted and plaintiff's complaint is dismissed in its entirety.

SO ORDERED.